### Jared Murray & others *vs.* County Commissioners of Berkshire.

By *St.* 1827, *c.* 77, § 14, and Rev. Sts. *c.* 39, § 17, when a turnpike road is laid out as a common highway, the owners of the land, over which the turnpike was laid out, are not entitled to full damages, as if their land had then, for the first time, been taken for a way, but are entitled to such damages only, if any as exceed those which they would have sustained by the continuance of the road as a turnpike; although by *St.* 1804, *c.* 125, § 15, and Rev. Sts. *c.* 39, § 15, upon the discontinuance of a turnpike road, the land revests in the persons who were owners thereof when it was taken or purchased for the purpose of making the turnpike, or in their heirs or assigns: And the legislature had authority to prescribe this rule of damages, in cases of turnpikes previously granted, as well as in cases of turnpikes granted subsequently.

SHAW, C. J.    This is a petition to this court for a writ of mandamus to the county commissioners, requiring them to issue their warrant to the sheriff, to summon a jury and assess their respective damages, by reason of laying out the Great Barrington Turnpike as a common and public highway.    The petitioners allege, in general terms, that they are owners, or the heirs or assigns of the owners, of the lands on which this turnpike was laid out in the year 1812.    They insist, that as the law then stood, (*St.* 1804, *c.* 125, § 15,) and has since been continued in force, (Rev. Sts. *c.* 39, § 15,) it was provided, that when any turnpike should be discontinued, the land over which it was laid should revest in those who were owners when it was laid out, their heirs and assigns, whether the land was taken or purchased for such use.    In regard to the lands *taken*, it might have been a little more accurate, and strictly technical, to declare that the full possession and enjoyment of the lands should revert to the owners or their heirs; because their title to the lands was never devested, but they continued seized of the land, subject to a perpetual public easement.    In regard to lands *purchased*, the language was appropriate and technical; and it was sufficiently intelligible as to both, when classed together.    From this view of their rights, the petitioners infer that, when the turnpike was discontinued, they were restored to their full rights of property and possession, and that when a highway was laid out over the same land, they had a right to full damages, to be assessed under the general act for laying out highways, (Rev. Sts. *c.* 24,) in the same manner as if their land had then for the first time been taken for a highway.

The county commissioners have filed an answer, in which they have certainly set forth several formidable objections to this claim, independently of what may be considered the main question; as, for instance, that the petitioners have not at any time set forth their particular and respective titles to any particular and described parcels of land; that when the highway was in process of being laid out, they gave the commissioners no notice of their titles, and made no claim

for damages; that when the highway was laid out, they made no request to the commissioners to assess their respective damages, but only to issue a warrant to summon a jury; with some other similar exceptions.   But we have thought it best to pass these all over, without further notice; because the court are of opinion, that upon the main question, which involves the merits of the case, the claim of the petitioners is not well founded.

The case of the petitioners is precisely within the provision of the Rev. Sts. *c.* 39, § 16, authorizing commissioners to lay out any turnpike road as a common highway, with the assent of the corporation and of the several towns through which the road passes.   Then it is provided, in § 17, that "in the assessment of damages, there shall be allowed, to any persons injured thereby, such damages as they would justly be entitled to receive, beyond the damages that would have been sustained by the same persons, by the continuance of the same as a turnpike road, and no more."   This was the mere revision and reënactment of *St.* 1827, *c.* 77, § 14, containing substantially the same provision.   " Persons injured *thereby;*" by what ?   Certainly the one entire act and exercise of public authority, in converting a turnpike into a highway, substituting one public use for another of the same kind, and designed to accomplish the same purpose.   In general, such a change will occasion no damage to the private proprietor, but may often be of benefit to him, by relieving him from tolls. But if the change should cause any additional damage, the statute allows it to him.

Nor is this inequitable.   The proprietors have already been paid for a perpetual easement over their land, for all the actual uses and purposes of public travel; a payment commonly estimated, in practice, at the value of the land itself. No such change, from a turnpike road to a highway, can be made by the commissioners, without the assent of the turnpike corporation; and the commissioners are authorized to make the corporation a compensation for the relinquishment of their franchise.   Rev. Sts. *c.* 39, § 19.   If therefore any

body is entitled to compensation from the public, for this continuing easement, it is the corporation. They have paid the owners of the land for it ; by their assent to the change, they transfer it to the public, under the sanction of law, and thereby the public become their assignees.

We have spoken of this as the substituting of one public use for another of the like kind ; but it is hardly a change of the use. It is rather a change of the mode in which an existing highway shall be supported, repaired and maintained.

A turnpike is a highway, which all the public have a right to use, which no one has a right to obstruct, not even the corporation that build it, except so far as they are expressly authorized by law to do so, in order to secure the tolls granted them. · It is a highway, the obstruction of which is a nuisance, and an indictable offence. *Commonwealth* v. *Wilkinson*, 16 Pick. 175. On no other ground would the legislature be justified in exercising the public right of eminent domain, by authorizing the taking of private property for laying out a turnpike. Then the change of a turnpike to a common public highway is rather a continuance of the same public easement, under a modification of form, not in general affecting the rights of proprietors of lands over which it passes.

The grounds taken by the petitioners seem to be, that the discontinuance of the turnpike was a separate and independent act, by which rights of land owners to the title and possession of the lands reverted to them ; and then, by a distinct, substantive act, a highway was laid out over the same land. But this is not, in our judgment, a correct view of the operation of the law and the acts done under it. *Non constat* that the corporation would have assented to the relinquishment of their franchise, or that the commissioners would have accepted it, charging the county and towns with the repair and maintenance of the road, but upon the terms prescribed by the act. Without such concurrent act of the corporation and the commissioners, the petitioners' lands would have stood charged, as they were before, with a perpetual easement

for a public way, neither smaller nor less enduring than that with which they are now charged.

The court are therefore of opinion, that the statute authorizing county commissioners, with the assent of a turnpike corporation, to lay out a turnpike as a common highway, paying to individuals the damage, if any, which they would sustain, beyond what they would have sustained by the continuance of the turnpike, was an act within the limits of a just exercise of legislative power; that it provided, with due care, for the preservation of private rights; and is a valid law, which governs the present case.

*Petition dismissed.*

*Bishop & Emerson*, for the petitioners.

*Barnard*, for the respondents.