WEIRICH, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 14—June 3, 1909.*

*Construction of penal statutes: "Public highways:" Toll roads: Automobiles: Speed.*

1. A penal statute is open to construction when there is reasonable uncertainty as to its meaning.
2. In case of there being two or more equally reasonable meanings of a penal statute, that one is to be regarded as expressing the legislative will which is the least severe as regards previous conditions.
3. The rule of strict construction of a penal law is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose.
4. The term "public highway," in the broad ordinary sense, includes every common way for travel by persons on foot or with vehicles rightfully used on highways, which the public have the right to use either conditionally or unconditionally.
5. The term "public highway" in a limited sense means a way for general travel, which is wholly public.
6. In the general sense the term "public highways" includes toll roads; in its limited sense it does not.
7. The term "public highway" in a general law should be regarded as having been used by the legislature in its general sense unless there is some efficient reason for believing it was used in the limited sense.
8. A general law, regulating the operating of automobiles upon public highways in the interest of public safety, rather suggests use of the term "public highway" in the general than the particular sense, since the danger of personal injury is quite as great and immunity therefrom is quite as important as to travelers on the one as the other.

[Syllabus by MARSHALL, J.]

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Affirmed.*

Writ of error to the municipal court of Milwaukee county to review a conviction for violation of sec. 3, ch. 305, Laws of 1905.

The law claimed to have been violated made operating an automobile upon any "public highway" within the corporate limits of any city or village, at a speed exceeding twelve miles per hour, an offense punishable by a fine of not less than $10 and not more than $25. The cause, by consent, was tried without a jury. The proof showed the accused to have violated the statute, if Whitefish Bay Road—a toll road located within the corporate limits of the village of East Milwaukee and owned and operated by a private corporation under ch. 350, P. & L. Laws of 1869—is a public highway within the meaning of sec. 3, ch. 305, Laws of 1905. The trial court held in the affirmative on that proposition and rendered the judgment in question accordingly.

For the plaintiff in error there was a brief by *Ryan, Ogden & Bottum,* and oral argument by *L. M. Ogden.*

For the defendant in error there was a brief by the *Attorney General, A. C. Backus,* district attorney, and *Norman L. Baker,* assistant, of counsel, and oral argument by *Mr. Baker.*

MARSHALL, J. The following is the statute under consideration:

"No person or persons shall use, operate, ride or drive any automobile or other similar motor vehicle along or upon any public highway of this state within the corporate limits of any city or village at a speed exceeding twelve miles per hour. . . ." "Any person who shall violate the provisions of," etc., "shall be punished by a fine of not less than ten dollars and not more than twenty-five dollars. . . ." Secs. 3, 8, ch. 305, Laws of 1905.

It may well be conceded, as claimed by counsel for plaintiff in error, that where the meaning of a penal law is obscure

so the legislative purpose is discoverable only by aid of rules for judicial construction, and there are two or more meanings which are equally within the scope of the language, that one least severe is to be regarded as the one intended, unless it appears, satisfactorily, in the light of all legitimate aids in the matter, that some other of such meanings was intended. In other words, strict construction in favor of the person sought to be penalized should prevail. That is too elementary to need to be more than stated.

It is a mistake to suppose that a penal statute is, necessarily, to be strictly construed so as to minimize its otherwise severity, as might be thought by the often unguarded statements of the rule,—because a statute does not always necessarily have to be construed at all. As has often been said, judicial construction is only invokable to solve uncertainties. So where there is no ambiguity there cannot, legitimately, be judicial construction. *Rice v. Ashland Co.* 108 Wis. 189, 192, 84 N. W. 189; *Rossmiller v. State,* 114 Wis. 169, 178, 89 N. W. 839. Vattel's rule in this regard, by reason of its universal approval, has the force of written law:

"It is not allowable to interpret what has no need of interpretation. Where the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act, would be an attempt to elude it, a method which if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless."

It is also a mistake to suppose, in case of a penal statute being ambiguous, that the one of two meanings which are within the scope of the language used that will render it the least severe is to be regarded as embodying the legislative idea. As before indicated, given an ambiguous law, and uncertainty as to which of two or more meanings reasonably within the scope of the language thereof, from the point of view from which observation should be taken, was intended, then and

then only does the elementary rule as to strict construction come into play as an instrumentality for solving the difficulty. *Miller v. C. & N. W. R. Co.* 133 Wis. 183, 113 N. W. 384.

The foregoing stated principles were expressed in *Miller v. C. & N. W. R. Co., supra,* referred to in the attorney general's brief, thus: "The idea of strict construction does not suggest attributing an unreasonable meaning."

As a companion rule to that as to strict construction of a penal law, we have the one that such a law as well as any other is to have a reasonable, sensible construction, so as to effect, so far as practicable, the legislative purpose (*Miller v. C. & N. W. R. Co., supra*), and the further very general rule that in construing an enactment observation thereof should be taken from the point of view of the mischiefs to be prevented, of the whole of the enactment and every part thereof, the subject matter, the effect and consequences, and the reason and spirit (*Ogden v. Glidden,* 9 Wis. 46; *Harrington v. Smith,* 28 Wis. 43; *Hartford v. N. P. R. Co.* 91 Wis. 374, 64 N. W. 1033; *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 79 N. W. 422).

Applying the foregoing to the case in hand there is no serious difficulty in reaching a satisfactory result. The term "public highway," in its broad popular sense, includes toll roads—any road which the public have a right to use even conditionally, though in a strict legal sense it is restricted to roads which are wholly public. Elliott, Roads & Streets (2d ed.) § 8; Mills's Thompson, Highways (4th ed.) 7; *Neff v. Reed,* 98 Ind. 341; *Rogers v. Bradshaw,* 20 Johns. 735, 742; *Pittsburgh, M. & Y. R. Co. v. Comm. ex rel. Att'y Gen.* 104 Pa. St. 583, 586; *Northern Cent. R. Co. v. Comm.* 90 Pa. St. 300, 302; *Fox v. Union T. Co.* 59 App. Div. 363, 69 N. Y. Supp. 551; *Dodge Co. Comm'rs v. Chandler,* 96 U. S. 205, 208; *Bonaparte v. C. & A. R. Co.* 3 Fed. Cas. 821, 829; *Craig v. People ex rel. Nevill,* 47 Ill. 487, 493; *Comm. v. Wilkinson,* 33 Mass. 175; *Murray v. Berkshire Co. Comm'rs,*

53 Mass. 455, 458; *Pickard v. Howe,* 53 Mass. 198, 208; *State v. Maine,* 27 Conn. 641.

In the numerous cases cited we find very many laws treated where it was held that a toll road is included in the term "public highway." In *Neff v. Reed, supra,* it was held that such a term in the drainage law of Indiana includes a toll road. In *Craig v. People* it was said that, in the general sense, toll roads are public highways notwithstanding they are subject to the toll burden. The public has the same right to use them, subject to the toll exaction, for general travel as ordinary highways. In *Dodge Co. Comm'rs v. Chandler, supra,* the federal supreme court held that a toll road is a public highway because the public have a right to use it and that the charge of a toll in no way affects its character as a public highway. In *Comm. v. Wilkinson, supra,* an indictment for encroaching upon a public highway, which was a toll road, was sustained. In *State v. Maine, supra,* the nature of the action and the result was the same as in the preceding cited case, the court saying:

"A road constructed and supported by a turnpike corporation differs in no essential characteristic from a common highway, established and supported by a town, a borough, or a city. Their origin and objects are identical. Both emanate from the same supreme power, acting through the legislature, the courts, or other depositaries of authority designated by the laws. Both are called into existence, and supported, to subserve, in exactly the same way, the public necessities and convenience, and both alike are intended to endure for an indefinite period . . ."—citing Massachusetts cases above referred to holding that a toll road is a public highway.

Now is there any reason for holding that the term "public highway" was not used in the law in question in its broad general sense? It is suggested that an intent to use the words in a limited sense is inferable from the modifying word "public" in view of the fact that toll roads are differentiated from ordinary public ways in sec. 1895, Stats. (1898), by

its providing that upon the abandonment of a toll road by the owner it shall be deemed a public highway, and in sec. 1311a, Stats. (1898), providing for the acquirement by the public of toll roads for the purpose of making them public highways. It does not seem so.   On the other hand, in view of the well-known need for regulation of the operations of the dangerous modern road machine, the word "public" seems quite·as likely to have been used to broaden as to restrict the word "highway," so as to include all ways used by public right for public travel.

The manifest purpose of the law was to protect travelers upon public ways from being subjected to the peril created by unduly speeding automobiles thereon.   It is just as important to afford such protection on toll roads as on ordinary public highways.   There is no difference whatever.

Therefore, while recognizing that in some cases, by application of the rule of strict construction, the term "public highway" has been held to rather exclude than include toll roads, each case went upon its own particular circumstances and in some instances not very satisfactory reasoning.   Few, if any, of the multitude of judicial authorities extant hold that the general meaning of public highways does not include toll roads.   We have reached the conclusion that in passing the law in question the legislature, very clearly, contemplated furnishing a remedy, by way of prevention and punishment, for speeding with automobiles upon any public thoroughfare, where such speeding, if allowed, might imperil the personal safety of travelers,—that the term "public highway" was used in a sense as broad as the mischief to be guarded against, which was just as significant as to toll roads as ordinary highways.

*By the Court.*—Judgment affirmed.