ESTERRA, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 7—May 8, 1928.*

For the plaintiff in error there was a brief by *A. B. Fontaine* and *G. F. Clifford,* both of Green Bay, and oral argument by *Mr. Clifford.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Raymond E. Evrard,* district attorney of Brown county, and

*Lee H. Cranston,* assistant district attorney, and oral argument by *Mr. Messerschmidt* and *Mr. Cranston.*

CROWNHART, J. The facts are not much in dispute. The real question in issue is as to the intent of the defendant. Defendant came from Chicago the day before his arrest, and put in his time around Green Bay at saloons and road houses, where he drank liquor and became intoxicated. A man by the name of Bender, an associate of his, came from Chicago and was in Green Bay with him at the time. Bender and the defendant stopped at the Beaumont Hotel the night of September 18th, where the defendant was registered under the name of John McDowel. On the evening of September 19th an old man by the name of Rolff, who had been carousing around with the defendant and who had a room in the Beaumont Hotel, was assaulted and robbed in his room. Suspicion attached to the defendant as the guilty party. The defendant had gone by taxicab to railroad stations in Green Bay to ascertain the time when he could get a train out for Chicago. No trains were available until around midnight, and he came back by taxi and got out at the Beaumont Hotel. In the meantime Policeman Burke, a plain-clothes man, had been called to the hotel to investigate the robbery, and a cab driver called Burke's attention to a man walking on the opposite side of Main street from the Beaumont Hotel, as the party he was looking for. Burke went across the street and followed the defendant, who was going westerly on the sidewalk on the south side of Main street. Defendant went into a restaurant. Burke passed the restaurant and saw the defendant therein, but continued on for some distance and stopped and watched the restaurant for the defendant to come out. The defendant came out and turned to the east, and came to an alley, which he turned down. He had a satchel in his hand. On the opposite side of Main street, at the continuation of the alley on that side, were three or four cab drivers. Burke immediately followed the defendant east

on Main street. It appears that just before Burke came to the brick building at the corner of the alley the defendant had put down his satchel and stood against the wall, got out his revolver, and pointed it along the wall toward Main street. Just before Burke reached the corner of the brick building he noticed the gun projecting slightly beyond the wall. He thereupon took his own revolver in his hand, reached beyond the wall, turned it into the alley, and fired. Almost simultaneously the defendant fired his gun in the direction of Main street. The powder from defendant's gun blackened and penetrated the hand of Burke. Thereupon a scuffle took place between the two men. Burke got the revolver away from the defendant, who was thrown to the ground, arrested, and taken to jail. After his arrest he was interviewed by the district attorney and his statement taken in shorthand by a stenographer. A portion of such statement was introduced in evidence at the trial as admissions. The defendant did not take the stand.

It is the contention of the State that the defendant knew that a police officer was following him, and that it was his intention to shoot the officer as he came in sight.

It is the contention of the defendant that he had on his person some $1,200, which was a fact, and that he thought he was being followed by a robber; that he had his weapon in his hand as a protection; that his gun was fired in the air owing to the action of Burke in attempting to shoot the defendant. The trial, which lasted about three days, was largely conducted to determine the intention of the defendant in firing his gun. It appears that Burke was in plain clothes and had made no announcement to the defendant of his official capacity, and defendant claims that he did not know Burke was an officer. On the other hand, on the part of the State, there was testimony to show that the defendant had learned prior to the shooting that the officers were looking for him, and that he did believe that Burke was an officer, and that he intended to shoot to kill in resisting arrest.

We think the question of intent became a question for the jury, and that their verdict cannot be disturbed unless errors in the trial were such as to prevent the defendant from having a fair trial.

The defendant claims that as a matter of law there existed a reasonable doubt as to defendant's guilt; that the court erred in refusing to set aside the verdict for that reason; that the court erred in admitting the statement of the defendant taken by the district attorney; that the court erred in admitting evidence showing that the defendant was a Chicago bootlegger and an associate of Chicago bootleggers; that the court erred in admitting statements about defendant having served prison terms elsewhere; that the court erred in receiving evidence as to the details of the alleged robbery at the Beaumont Hotel, in admitting the complaint of Burke against defendant for the robbery of Rolff; that the court erred in refusing to charge the jury as requested by the defendant; and the court erred in permitting the district attorney to make improper arguments to the jury.

We have considered the first two assignments of error, and hold that the question of intent was for the jury. The statement made by the defendant to the district attorney appears to have been voluntarily made. There were no third-degree methods applied, no threats, no inducements held out to the defendant to make his statements. He clearly understood his right to refuse to make any admission, and that he was not under any compulsion to do so. Admissions so made were properly introduced in evidence.

In his statement to the district attorney the defendant admitted that he was a bootlegger, and that Bender, his associate, who came with him to Green Bay, was also a bootlegger, and that they were at Green Bay in connection with that business.

The business, profession, or occupation of defendant, in general terms, is always admissible,—not to prove a crime but to lay the general situation before the court or jury.

The statements of the district attorney, referring to the defendant as having served prison terms before, were improperly made. The defendant was on trial for one offense, and proof of other offenses was not admissible except by the record of prior convictions or by admissions on cross-examination, and then only as going to the credibility of the defendant's testimony. Defendant did not take the stand, and hence any reference to prior convictions was clearly error. *Paulson v. State,* 118 Wis. 89, 94 N. W. 771; *Rice v. State,* 195 Wis. 181, 217 N. W. 697.

The same rule applies to the introduction of evidence of the robbery of Rolff and the probable connection of defendant therewith.

The criminal complaint filed against defendant was admitted with reference to a dispute over the possession of a stickpin by defendant, supposed to be the property of Rolff. That dispute had not proper place in the trial. It was error to admit the evidence. The instructions of the court as a whole, we think, fairly presented the case to the jury. It is unnecessary to consider further the refusal of the court to give instructions requested. They were not applicable to the facts in the case and were properly refused.

It was improper to consider the fact that defendant was a bootlegger for the purpose of showing that he committed the crime, and the district attorney improperly stressed that fact to the jury. *Paulson v. State, supra.* A large part of the district attorney's address to the jury was given over to a discussion of the defendant as a bootlegger and an associate of Chicago bootleggers and criminals in general. He cited other crimes in Green Bay that had been committed by Chicago criminals, and he characterized Chicago bootleggers as dangerous criminals, referring to newspaper notoriety as evidence of the fact. This was clearly error and might well be prejudicial error in most cases.

Some of the errors assigned were not properly preserved by timely objection, but were this a close case, on the facts

we would have no hesitation in reversing the judgment for the numerous errors committed by the State. There is no excuse for the conduct of the district attorney in this regard during the trial. The errors made were too many and too clearly such as to make any justification possible. But, under sec. 274.37, Stats., to the effect that no judgment shall be reversed or set aside for error in procedure, unless this court is of the opinion, from an examination of the entire record, that it appears that defendant's rights have been prejudicially affected, we think the judgment may be allowed to stand.

As we have said, there is no substantial conflict in the evidence except upon the question of intent of defendant in shooting, and the intent follows as an inference from the facts. It is impossible to account for the defendant's action on any other theory than his intent to shoot Burke, and if that was his intent it must be presumed that he intended the natural consequences of such act. The defendant was traveling on Main street, within a block of the Beaumont Hotel, in the business center of the city of Green Bay, which street was well lighted, and the Beaumont Hotel was his stopping place,— a large and respectable hotel. If he thought in fact that he was being followed by a robber, his way of escape was perfectly plain. All he had to do was to walk across the street a block to the hotel. He was in no danger of being robbed in the bright lights of the street, within sight of several taxi drivers just across the street in the alley. We think the jury were at liberty to find as they did, and could hardly have found otherwise, upon the competent evidence, and that the errors assigned, under a fair consideration of all the evidence, were not prejudicial.

*By the Court.*—The judgment and sentence of the municipal court are affirmed.