374

Farino, Plaintiff in error, vs. The State, Defendant in error.

*December 13, 1930—January 13, 1931.*

376

For the plaintiff in error there was a brief by *Rubin &
Zabel,* attorneys, and *W. B. Rubin* of counsel, all of Mil-
waukee, and oral argument by *Mr. Rubin.*

For the defendant in error there was a brief by the *At-
torney General, George A. Bowman,* district attorney of
Milwaukee county, and *Oliver L. O'Boyle,* deputy district
attorney, and oral argument by *Mr. O'Boyle.*

FAIRCHILD, J.  The defendant's first assignment of error relates to the proving of venue.  The law that criminal cases shall be tried in the county where the offense was committed does not require the use of any prescribed formula in establishing venue.  The State meets the requirements placed upon it when it has been made to appear definitely that the offense was committed in the county where the trial is being conducted or from which the case has been properly transferred.  And this may be by specific statement or by proof of facts from which such inference reasonably follows. This important fact is usually so easily demonstrated that it is not often in doubt and it is not here.  The evidence offered at the trial sufficiently identified the place and fixed the location within Milwaukee county.  The testimony of detective Carlson is to the effect that this shooting occurred in Milwaukee in the so-called "Black Belt" north of State street and between State and Walnut, and that 463 Sixth street (the colored cabaret) is in what is commonly known as the Black Belt.  There is other evidence bearing upon this, and the jury visited the location for the purpose of having a view.

As to the assignment that the evidence does not support the verdict of murder in the first degree, a study of the record convinces one that the jury was bound to find the defendant guilty of some one of the degrees of homicide submitted, and that in view of the evidence adduced the court submitted, and submitted properly, the degrees of homicide covering the circumstances of the case.  The verdict of the jury as rendered is sufficiently sustained.  It is true the events leading up to the shooting were few in number and of a trifling nature; that the defendant was not driving the car when it bumped into the man who was knocked down; that he was riding on the back seat; that there is not much to suggest a motive for so fierce and cold-blooded an act as the shooting which occurred; and that the time for

deliberation and premeditation was not extensive; but the evidence does establish that he took the life of another by the infliction of a wound naturally and probably calculated to produce death. He had his revolver with him, it was loaded, he reached for it, pointed it at a vital part of the body of a human being and discharged it, causing death.

Where the circumstances connected with a homicide show intent to kill, that element of intent is established. The elements of intent to kill—deliberation, premeditation—in murder in the first degree may be inferred from the circumstances and character of the act of killing itself in the absence of circumstances repelling the idea.

The defendant in his statement to the police claims to have fired the shot in self-defense. At the trial he shifts and testifies he was holding the gun, that he wanted to defend himself, and says, "I did not intend to shoot or kill anybody; I had the gun in my hand and the car jerked; I heard an explosion. Tony Corroo had a gun in his hand. I don't know whose gun was fired." He described himself as excited, and gives reasons for it, such as seeing something flash in the hands of Goff. What he did immediately after Goff was shot and fell from the running-board was to put the gun back on the seat and drive away to another soft-drink parlor, taking occasion to look back and seeing that which is set forth in the statement of facts.

Self-defense is a positive intentional act. The feeble attempt to show an accidental discharge of the revolver together with an equally weak attempt to establish self-defense and to create confusion as to whether his pistol was discharged or not destroys all faith in his testimony.

If the jury had found the defendant guilty of murder in the second degree the verdict would have been sustained under the evidence here. It was a jury question, however, as to which degree of homicide the defendant was guilty of. When the evidence was all in, the jury had before it a de-

fendant who had been convicted of larceny, on probation for two years, shown to be involved in a prosecution for violation of the Volstead act, armed with a gun which he appeared to intend to use on slight provocation; that he did so use it under circumstances which indicate that he was not acting in self-defense. The evidence in connection with the course the bullet took through the body very strongly indicates that Goff was not in position of attack in which the defendant attempted to prove he was, but that he was standing erect with his head above the top of the automobile at the time the shot was fired. There is other evidence which overcomes the attempt of defendant to excuse himself on the theory of self-defense. The jury were viewing a defense which was made up of shifting positions and statements which indicated that their author had very little, if any, regard for the truth; they saw the defendant flee from the place of shooting and attempt to conceal the facts connected with it. As said before, there was a jury question. The proper degrees of homicide were submitted under instructions that were fair and applied correctly to the facts of the case. The finding of the jury is amply sustained and we find no prejudicial error in the rulings of the court.

In the absence of evidence to the contrary, he who takes the life of another by the infliction of a wound naturally and probably calculated to produce death is presumed to have intended that result and to be guilty of murder in the first degree under our statutes. *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 98 N. W. 546; *Manna v. State,* 179 Wis. 384, 192 N. W. 160.

As to admissions: Confessions made by a prisoner while under arrest are admissible if not elicited by coercion, threats, or artifice. The sum total of the evidence of the defense and of the prosecution with relation to the statements made to the police certainly warranted the court in ruling that they were admissible. They were used as ad-

missions, and the jury was told by the court that if they believed from all the evidence that such statements, or any of them, were obtained by abuse, force, threats, coercion, inducement of promises, or while the defendant was under the influence of fear of physical punishment by those having him in custody, that then it was their duty to reject any confession so obtained and that they were at liberty to accept or reject any or all of the statements accordingly as they were satisfied by the evidence that they or any of them were obtained or made under proper or improper influences or conditions.

The burden of proof that the statements were voluntary and not obtained by improper means was upon the State, and the jury was told that they must be satisfied beyond a reasonable doubt that such statements were freely and voluntarily made before they could consider them. The court proceeded to say that in determining the guilt or innocence of the defendant, "You should scrutinize the evidence with the utmost care and caution, bringing to that duty all the reason and prudence which you would exercise in the most important affairs of life. In fact, all of the judgment, care, caution, and discrimination that you possess; and if after such scrutiny of all the evidence you entertain a reasonable doubt of the defendant's guilt, you must acquit him." When this is considered in connection with the testimony of the defendant to the effect that the statements made by him to the police were not true, we have a full and complete presentation of all the evidence which bears upon this phase of the case submitted to the jury under proper instructions, justly and fairly stated.

The next assignment of error arises out of the refusal of the district attorney to call certain witnesses who were present when the murder was committed, particularly the three companions of the defendant.

At the close of the State's case the defendant moved the

court that the State be required to call Corroo and Gagliano as State's witnesses. This motion being denied, the defendant placed Gagliano on the stand, and after he was sworn asked the State to proceed with the examination. This was not done and defendant's counsel did examine the witness and then later objected to the State's cross-examination, which objection was overruled.

The practice followed in this instance was according to the law of this State. The last discussion of it in the Reports seems to be in *Dillon v. State,* 137 Wis. 655, 119 N. W. 352. On page 659 it was said: "It would seem to be proceeding beyond bounds of reason or of justice to require the State in all instances to call all eye-witnesses to the commission of an alleged crime. The weight of authority in this country is certainly against the contention of the defendant" (citing authorities). The witnesses the defense sought to have the State call were the associates of the defendant. The right to cross-examine a witness who is plainly antagonistic is within the discretion of the trial court, and a careful reading of the testimony given by these witnesses does not suggest any occasion for a different course to be pursued than was followed by the trial judge in this instance.

No useful purpose would be served by a further discussion of the evidence submitted or the rulings made tending to show that the trial was fair and that there has been no miscarriage of justice. The motion for a new trial was properly denied.

The motion to strike affidavits and photographs from the bill of exceptions is denied. They were received by the trial court and are properly part of the record. We are satisfied that the defendant's rights were fully protected and that the evidence warranted his conviction of murder in the first degree.

*By the Court.*—Judgment affirmed.