STATE, Respondent, v. RATKOVICH, Appellant.

(No. 8,018.)

(Submitted April 2, 1940. Decided September 21, 1940.)

[105 Pac. (2d) 679.]

*Mr. C. F. Maris* and *Messrs. Crippen & Crippen,* for Appellant, submitted an original and a reply brief; the latter counsel argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Mark H. Derr,* Assistant Attorney General, and *Mr. F. V. Watts,* County Attorney of Musselshell County, for the state, submitted a brief; *Mr. Derr* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from the judgment of the district court of Musselshell county. The appellant, Nick Ratkovich, was found guilty of murder upon a jury trial and sentenced to life imprisonment in the state penitentiary. Briefly stated, the facts are these:

On the night of December 13, 1938, the decedent, one Steve Roncevich, came to the home of defendant's parents. During the course of the evening the deceased, the defendant and the defendant's mother "visited", and the testimony is that they drank a certain amount of wine and beer. Later in the evening at the request of the deceased, defendant left the house to go to a neighboring beer parlor to purchase some beer; the money, twenty-five cents, was furnished by the deceased. The testimony is that he took this money from a tobacco sack which he kept inside of his shirt. While the defendant was gone his mother assisted Roncevich, who was about 72 years of age, out the back door onto a small porch with several steps leading down therefrom, so that deceased might urinate. The testimony is that the door into the house was left partly open. Within a very short time after this, the defendant carried the decedent into the house and laid him on a pile of coats and blankets on the floor which articles had been previously put there by defendant's mother, as a bed for the deceased, as he had been invited to spend the night. When defendant brought the deceased into the house he was unconscious, and he had some blood about one ear which defendant washed off. The defendant called a doctor who came immediately, and with the de-

fendant the doctor took Roncevich to the hospital in Roundup. The testimony of the various medical witnesses was to the effect that Roncevich's skull had been fractured by a very severe blow. The witness Lydia Ramsey testified that the deceased was unconscious and incoherent all of the time he was in the hospital and that he died there early on the next morning.

The defendant told the doctor and others, including members of the sheriff's force, that he had found the deceased lying along the road. He later changed this story and said that he found him in one position in the backyard, and subsequently changed the story and stated that he had found him in another position near the steps coming down from the porch.

The testimony further is that on the second day following the injury to the deceased the defendant spent some two or two and a half dollars for drinks in various beer parlors, and that, when pressed for explanation, he said that he had stolen the money from his mother. When questioned about this she denied that she had any money and that he took it from her. Subsequently, about the third day after the occurrence of the night of December 13, it is testified the officers of Musselshell county secured a confession from the defendant, and this alleged confession recites that when the defendant was returning from the beer parlor, the deceased was standing in the backyard; that some argument arose and that the defendant went into a coal shed and there secured a hammer with which he hit the deceased on the head and that he took from the person of the deceased a tobacco sack containing two or two and a half dollars, and that defendant subsequently burned the tobacco sack and kept the money. Other pertinent facts will be discussed in our consideration of the legal points involved.

A motion for new trial was made, based upon certain affidavits which purport to set out newly discovered evidence. These affidavits were followed by other affidavits by the same persons to the effect that they had been bribed to testify in behalf of the defense, and more particularly that they had been bribed to make the affidavits on which the motion for new trial was based. The motion was by the court denied. The first specifica-

tion of error we will discuss is based on the admission of testimony as to certain tests made by witnesses for the state.

The testimony of the witness Lydia Ramsey, who was in charge of the hospital to which Roncevich was removed on the night preceding his death, was that Roncevich was incoherent. The testimony of the witness Edith Ford was that on the night in question she occupied a room in the hospital adjacent to that occupied by Roncevich; that during the night she heard him say, among other things, "Steve pa," and that he repeated those words several times. The witness Frances Spek testified that she occupied on the same night a room immediately above that occupied by Roncevich; that there was an open stairway adjacent to her room which ran into the hallway immediately outside of the door of the room occupied by Roncevich, and that she heard him on the night in question repeat the words "Steve" and "pa" several times. She further testified that she was Austrian, as was Roncevich, and that the word "pa" in that language means "fall."

It was the theory of the defense that the injury which caused the death of Roncevich was caused by a fall, and this testimony as to statements made by him after the injury was material in proving this contention. On rebuttal three witnesses were asked if they had made any tests in the hospital in question to determine whether a conversation in the room occupied by Roncevich could be heard in the rooms occupied by the witnesses Edith Ford and Frances Spek. The witnesses testified that they had made such tests and that, unless they were in a very loud voice, words spoken in the room occupied by Roncevich could not be heard in the rooms occupied by the witnesses Edith Ford and Frances Spek.

Examination of the record seems to indicate that no sufficient foundation was laid for the testimony as to this test. However, only in the case of one of the three witnesses was the objection made in time. With reference to another witness no objection was made at all, and in the case of the third it was made only after the evidence was substantially in without objection. But whether or not the testimony was properly ad-

mitted, it was prejudicial error on the part of the court to exclude the offered surrebuttal testimony on the part of the defense to rebut this testimony as to the experiment.

Evidence as to the tests made by witnesses for the state, if ▇ true, would effectively destroy the value of the testimony of the witnesses Edith Ford and Frances Spek. If the jury believed the evidence as to the test they would disbelieve the testimony of these two defense witnesses. The offer of proof made by the defendant was to the effect that certain named persons, whom he wished to call as witnesses, had, after the testimony referred to previously concerning the test made by state witnesses, made similar tests and it was possible to hear very clearly the words uttered in the room occupied by Roncevich in the two rooms occupied on the night in question by the two defense witnesses. When the trial court sustained the state's objections to this evidence of tests, the defendant asked for the reopening of the case and to have the jury conducted to the hosptial for a view of the premises. This too was denied by the trial court. Rulings of the court on these questions were so prejudicial that the judgment must be reversed for a new trial of the cause. If the testimony of the two defense witnesses was believed by the jury, it would have a great bearing on their determination of the question presented to them. Once the credibility of these witnesses was attacked, the trial court should have permitted the defense to meet this testimony attacking the credibility of these two witnesses.

There was competent testimony to the effect that Roncevich was unconscious practically all the time between the injury and his death; that he spoke to no one, and that it was impossible, or at least that the possibility was very remote, that anyone with such a fracture could have spoken consciously or attempted to convey meaning by words. But we cannot conjecture that the jury were influenced by that evidence, rather than by the evidence, not permitted to be rebutted, that any words spoken could not have been heard by the two witnesses.

Defendant specifies error on the theory that the *corpus delicti* ▇▇ was not established. There is ample testimony to estab-

lish the *corpus delicti*. The statute requires that in a homicide case the death of the person must be established by direct proof and the fact of the killing by the defendant beyond a reasonable doubt. Here there can be no question that the direct proof of the death of the deceased existed, and there was ample substantial evidence, in addition to the confession, to the effect that the deceased came to his death by means of a criminal agency sufficient to warrant the admission of the confession of the defendant.

Among the circumstances, aside from the confession, which tend to establish the fact that the death of the deceased was occasioned by a criminal agency, was the defendant's presence at the scene, his conflicting stories as to where he found the decedent, the testimony as to money he had spent on the following day and where he obtained it, and the testimony of the medical experts as to the injury. These circumstances, together with the confession, amply meet the requirements of section 10962, Revised Codes, and there can be no question but that the *corpus delicti* was established sufficiently here to sustain the finding of the jury.

There must be some independent evidence establishing the *corpus delicti,* but it need not of itself be sufficient beyond a reasonable doubt, as, once the independent evidence is given, the confession may be considered with the facts and circumstances in evidence in determining whether the *corpus delicti* is established as above, and the guilt of defendant beyond a reasonable doubt. This court has recently so held in *State* v. *Traufer,* 109 Mont. 275, 97 Pac. (2d) 336; and see *State* v. *Cates,* 97 Mont. 173, 33 Pac. (2d) 578; *State* v. *Pepo,* 23 Mont. 473, 59 Pac. 721.

It is further urged by the defendant that the court erred in admitting the confession of the defendant for the reason that the testimony indicated that he was a person of limited mental ability. There is testimony on the part of several witnesses that this defendant (past 36 years of age at the time of trial) had the mind of a boy twelve years or less of age. The court should, of course, use caution in admitting evidence of a con-

fession. Here, however, the testimony of the defendant, his general statements and admissions, conduct and attitude indicate that the court did not err in admitting the confession. The question is addressed to the sound discretion of the court, and we find nothing here to indicate that the court, guided by its personal observation of the defendant, committed any error in admitting the confession. Appropriate instructions were given as to the caution to be used by the jury in considering this confession—particularly in view of the testimony as to the defendant's mental ability. We find no error in the admission of the testimony as to the confession. (16 C. J. 729.)

Error is predicated on the form of the testimony of the medical experts as to the cause of the injury. Their testimony, after lengthy descriptions by them of the nature of the fracture and the direction from which the force must have been applied to produce the type of fracture found, was that in their opinion the fracture was caused by "a blow from a blunt instrument." Defendant contends that the experts invaded the province of the jury when they testified as they did, and that their answers should have been restricted to the expression of an opinion as to what "might" have caused the injury. This argument is based on the conflicting theories advanced by the defendant and by the state, the former advancing the view that the injury was caused by a fall, and the latter that the injury was produced by means of a blow from a hammer wielded by defendant.

The general rule as to the form of answer to be given by an expert witness as to the cause of a stated effect is found in 22 C. J. at page 721: "A skilled or expert witness may state that a certain cause could or might have produced a stated effect, or conversely, that a stated cause could not or might not have produced a certain effect, and it has been considered that this is as far as the witness may go." The rule is similarly stated in Jones on Evidence, second edition, page 2466: "As shown above, in numerous instances the opinions of medical experts have been admitted to indicate the cause of death or of the physical condition of a person. In like manner we find

many authorities which hold that, under the circumstances of the particular case, expert opinion, usually that of a medical expert, is admissible to indicate the mode in which a particular wound or injury was inflicted or the kind of instrument, or the instrumentality, causing a wound or injury. The reason for the admission of expert opinion is in such cases that the determination of the cause of an injury often rests in the application of a knowledge of anatomy, or experience in cuts, bruises, or contusions, not possessed by the average juror. And it is not necessary that an expert witness, in order to testify to an opinion as to the cause of wounds or injuries, should have seen the wounds in question or others exactly similar. It is improper to ask a physician how certain wounds or injuries were actually given, as this would be trespassing upon the province of the jury. But an expert may be asked by what kind of weapon wounds of a given description "might" be caused."

Since the very fact in question here determinative of the whole case was the question whether the injury was caused by a blow delivered by the defendant or a fall, it would seem the answers of the experts infringed more than they should on the province of the jury. The necessities of the case usually determine the admissibility of particular testimony on the part of the experts. Here the opinion sought to be elicited may be secured by answers in the form contemplated by the rule, and on the new trial the opinion of the experts should be stated in the language of the rule, that is, that in their opinion the injury might or could have been produced by means of a blow from a blunt instrument.

Reversed and cause remanded for new trial.

Mr. Chief Justice Johnson and Associate Justices Morris, Angstman and Arnold concur.