KIEFER, Plaintiff in error, vs. THE STATE, Defendant in error.*

*October 6—November 8, 1950.*

---

\* Motion for rehearing denied, without costs, on January 9, 1951.

*John E. O'Brien* of Fond du Lac, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Jerold E. Murphy,* district attorney of Fond du Lac county, and oral argument by *Mr. Platz.*

MARTIN, J.    The facts are these: The victim of the assault was born December 22, 1945.  On September 16, 1949, she was living with her parents in a house on the main street of the village of Eden in Fond du Lac county.  Defendant conducted a garage and filling station about half a block away, and lived with his family in a residence immediately adjoining the garage.  The house of a Mr. Grahl was between the little girl's home and the defendant's garage.

The evidence shows that on Friday, September 16, 1949, at about 1:30 p.m. the little girl went over to the garage where she frequently played with one of the defendant's children, and returned home at about 2 p.m. She cried that evening and continued crying off and on all night but did not complain of being hurt in any particular place. Her father went to work at 4 a.m. on Saturday and about 9 or 9:30 that morning her mother dressed the daughter. She had not given her a bath the night before and had not observed anything wrong about her person. The child had difficulty in going to the bathroom the next morning and started to cry. It was at that time her mother examined her and saw that she was all sore in the region of her private parts. The child then told her mother what had happened to her. Later in the day she told her father, the deputy sheriff, and sheriff, but the witnesses were not permitted to testify as to the conversations.

The father arrived home about 4:30 or 5 o'clock that afternoon, and the mother told him of an alleged offense having been committed on the daughter. He examined the little girl and asked her questions, and then went to the sheriff's office at Fond du Lac. The sheriff told him to bring the little girl in for examination.

She was examined by Dr. Kief in Fond du Lac who found that both the vulva and the labia minora were excoriated, that the hymen was intact, and there was no abnormal vaginal discharge. He testified that the marks which he found might have been caused by the indiscreet and indiscriminate use of the finger or fingernails. On cross-examination he testified that the condition could be caused by sliding on a rough surface "if this surface would have come in contact with the parts we are speaking of."

At about 6 or 6:15 p.m. the sheriff sent a deputy to the home of defendant to bring him in for questioning. Defendant accompanied him willingly. On the way back to Fond du Lac, the deputy told defendant what it was about and advised

him to tell the truth about it, saying, "I may be able to help you."

When they arrived at the county jail and defendant saw the sheriff, he started to cry and said, "John, I done it." The sheriff and the deputy then took the defendant into the sheriff's office and within approximately one-half hour, the defendant signed a statement on a prepared form on which the deputy had typed the facts related by the defendant. These were to the effect that the little girl had gone into the toilet at the garage, that he went into the toilet and fingered her vagina and had tried to insert his penis but found the vagina too small, after which he had given her an apple and sent her home saying she should not tell her mother and dad. The defendant was then locked in a cell until Monday morning.

On Monday morning, September 19th, the sheriff and another deputy took the defendant to the district attorney's office to obtain a warrant. Another statement was prepared and signed by the defendant at about 10 a.m. The second statement was in substance the same as the first one with the addition that defendant said he thought he heard a car outside pull into the station and he then ceased his efforts.

The accused was charged with assault with intent to commit carnal knowledge and abuse. A warrant was issued out of the municipal court of Fond du Lac county and he was arrested and taken before the court at 10:50 a.m. The case was tried on December 5, 1949.

The defendant asserts that the testimony of the child determines without doubt that because of her infancy she was incompetent as a witness.

The little girl was seventeen days less than four years old. We have examined the record and find that neither at the time that she was called as a witness nor at any time during her testimony was any objection to her competency or to any question put to her raised by the defendant. No objection was made to the fact that she testified without being sworn

or affirmed or to the sufficiency of the preliminary investigation to determine her appreciation of the necessity of telling the truth. No objection was made to the fact that a part of the examination of the little girl as a witness was conducted by her mother. Defendant's counsel participated in the examination and then made the following statement:

"Mr. O'Brien: Well, if the court please; I wish it to appear in the record that the little girl, who will be four years of age on the 22d of December, 1949, and who was three years-plus of age at the time of the alleged incident making the basis of this prosecution, was called to the stand and seated on the lap of her mother, and then afterwards seated on an ottoman beside the judge's chair, and asked many questions as to identification of the defendant, and other questions as appear in the record. That thereafter it was suggested that possibly if she would be taken into the judge's chambers that she might speak more freely, and that was done, and that she was seated on her mother's lap, adjacent to the judge's desk, and was asked further questions by the court and by the attorney for the defendant as well as by her mother; and that the testimony given appears from the record as having been taken in chambers as to the latter part, and in open court as to the first part of her testimony. That the case was tried to the court without a jury, and the questions and answers propounded by her mother and by the court and by the attorney for the defense—well, I'm repeating there—were as appears from the record, and so answered.

"Mr. Murphy: If the court please; there's just one addition I'd like to make to that: That the defendant, Peter L. Kiefer, was present in chambers at the time the testimony was taken there.

"The Court: Oh, yes.

"Mr. O'Brien: As well as in open court.

"The Court: Yes. All right, Mr. Murphy, are you through?

"Mr. Murphy: The state rests, Your Honor."

Defendant's counsel then renewed his motion to have the confessions (Exhibits 2 and 3) stricken from the record, but no objection was made to the little girl's testimony.

It was held in *Dickinson v. Buskie* (1883), 59 Wis. 136, 138, 17 N. W. 685, that if the fact that a witness is intoxicated is brought to the attention of counsel while such witness is on the stand, the objection to his competency must be taken then, and will not avail if made for the first time on a motion for a new trial.

The rule that objection to the competency of a witness must be properly taken at the trial or it cannot be reviewed by this court is applicable where the alleged incompetency is due to infancy. *Pooley v. State* (1945), 116 Ind. App. 199, 62 N. E. (2d) 484; 2 Wigmore, Evidence (3d ed. 1940), p. 599, sec. 508, note 3.

Defendant's counsel cross-examined the little girl as to whether she had fallen in the garage, whether she ever slid down on a board in the garage, and whether she ever rode a kiddie car, a tricycle, or bicycle in there, all subjects which had not been covered upon the direct examination.

It was held in *State ex rel. Reynolds v. Flynn* (1923), 180 Wis. 556, 566, 193 N. W. 651, that where a defendant not only failed to object to the competency of complainant as a witness but cross-examined her on matters not brought out in examination in chief, he made the complaining witness his own witness and waived her incompetency to testify.

Therefore, the matter of the little girl's competency is not properly before the court. However, we wish to state that when the little girl did tell her story, it was in her own childish language. The competency of a witness to testify is largely a question for the trial court, and it is in a better position to judge the competency of the evidence than this court. *Markowitz v. Milwaukee E. R. & L. Co.* (1939), 230 Wis. 312, 320, 284 N. W. 31.

The next contention is that the trial court erred in admitting in evidence the confessions made by the defendant.

It is presumed in reviewing a trial court's finding that improper evidence taken under objection was given no weight in reaching the final conclusion, unless the contrary appears.

*Harrigan v. Gilchrist* (1904), 121 Wis. 127, 314, 99 N. W. 909; *Johnson v. Bank of Wisconsin* (1916), 163 Wis. 369, 373, 158 N. W. 59.

The record discloses that the trial court decided this case without reference to the confessions. It stated as follows:

"Now, taking her testimony with the testimony of the doctor, the mother, and the father, it appears to me that there is evidence here which, standing undenied by the defendant, leaves nothing for this court to do but to find the defendant guilty of the offense charged in the information. . . .

"I can't help but come to the conclusion that this man did molest that little girl. I reached that conclusion from the little girl's testimony, supplemented by the testimony of the doctor and the parents, that someone—and it just couldn't have come from any force such as might be implied, that is, as falling, or injuring themselves on a tricycle. No, it just couldn't happen that way; somebody molested that little girl; and before me stands the record of that molestation, undenied."

In sentencing the defendant, the court stated in part:

"And I can't believe that this little girl, even though, as I say, her credibility might be questioned, but she impressed me with telling the truth and I really don't believe that she could possibly have told this, what you did, and not have it be the truth. And when that stands before me, together with the doctor's testimony—leaving out of consideration everything else—undenied, there is only one conclusion that the court can reach."

This court has adopted the rule that the ultimate test of the admissibility of a confession is not whether it was voluntary or was induced by threats or promises or physical violence but whether it was obtained under such circumstances as to be testimonially untrustworthy. *Pollack v. State* (1934), 215 Wis. 200, 218, 253 N. W. 560, 254 N. W. 471; *State v. LaPean* (1945), 247 Wis. 302, 313, 314, 19 N. W. (2d) 289.

In this case the officer denied that he made any promise of help but admitted that he said, "I may be able to help you."

In several instances the officer's statement with reference to helping the accused was conditioned upon the latter's telling "the truth."

It is stated in 3 Wigmore, Evidence (3d ed. 1940), p. 263, sec. 832:

"On principle, the advice by any person whatever that it would be better to tell *the truth* cannot possibly vitiate the confession, since by hypothesis the worst that it can evoke is the truth, and there is thus no risk of accepting a false confession (ante, sec. 822). The confessor is not obliged to choose between silence and a false confession having powerful advantages; the advantages are attached to the utterance of the truth; and, however tempting we may suppose them to be, there is nothing in the nature of the temptation to make the statement untrustworthy; for if it has availed at all, it has availed to bring out the truth." See also *Hintz v. State* (1905), 125 Wis. 405, 409, 410, 104 N. W. 110.

The formal confession in writing was signed by the accused within about one-half hour after arriving at the sheriff's office. Defendant was then locked up in a cell and from then on it is clear that he was under arrest.

There is no evidence that the oral confession in the automobile, the admission to the sheriff, "John, I done it," or the written confession resulted from any reliance upon the vague suggestion of possible help made by the deputy sheriff, or that threats, promises, violence, duress, or coercion of any kind were used. The case is clearly ruled by the decision in *State v. Fransisco* (1950), 257 Wis. 247, 253, 43 N. W. (2d) 38.

Defendant was under arrest without a warrant over the week end, but the officers had ample probable cause to arrest and hold him without a warrant. The courts were closed and he could not be carried before a magistrate until the following Monday morning.

The record shows that the municipal court opened at 9 a.m. on Monday. Defendant was not taken directly to the court

but was taken to the district attorney's office. Instead of drawing up a complaint and warrant immediately, the district attorney first questioned the defendant and then had him sign another written confession. No threats, promises, violence, force, duress, coercion, or display of weapons was used to obtain this statement. The district attorney advised him of his rights and that anything that he might say could be used against him in court. The statement was read to defendant after it had been reduced to writing, and it was also read by defendant himself. The delay which resulted in this procedure was approximately a half hour which cannot be regarded as illegal detention.

Under the circumstances set forth, there was no error in receiving the confessions.

*By the Court.*—Judgment affirmed.