STATE, Respondent, v. BRONSTON, Appellant.*

*June 2—June 26, 1959.*

* Motion for rehearing denied, without costs, on October 6, 1959.

For the appellant there was a brief by *Marvin E. Klitsner, Lyman A. Precourt,* and *Fairchild, Foley & Sammond,* all of Milwaukee, and oral argument by *Mr. Klitsner* and *Mr. Precourt.*

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county, and *Ben J. Wiener,* deputy district attorney, and oral argument by *Mr. Wiener.*

CURRIE, J. The controlling questions on this appeal are:

(1) Does the evidence support the conviction of the defendant for aggravated battery under sec. 940.22, Stats.?

(2) Was the confession with respect to the attempted robbery testimonially untrustworthy?

(3) Was there a denial of due process which invalidated such confession?

### Aggravated Battery.

Aggravated battery was introduced into the criminal law of this state as an offense by the new Criminal Code adopted by the 1955 legislature. The most nearly comparable offense

under the prior criminal statutes of the state was assault with intent to do great bodily harm. See sec. 340.41, Stats. 1953. However, such prior offense of assault with intent to do great bodily harm bore a maximum state-prison sentence of three years, while the new crime of aggravated battery carries a maximum state-prison sentence of five years. Sec. 940.22, Stats. 1957. The offense of aggravated battery is described in such latter statute in this terminology: *"Whoever intentionally causes great bodily harm to another."* "Great bodily harm" is defined for the purposes of the new Criminal Code by sec. 939.22 (14), as follows:

" 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury."

It is plain to be seen that, unlike the former crime of assault with intent to do great bodily harm, the new offense of aggravated battery is not concerned with the potentialities of the offender's act but only with its end result. Therefore, it is immaterial whether a blow from the wrench wielded by the defendant might have caused Mrs. Zilke to suffer a brain concussion, a fractured skull, or fatal injury. The issue is simply, did she suffer great bodily harm within the meaning of the statute as a result of the blow?

Mrs. Zilke's injury resulting from the blow consisted of a two-inch laceration of the scalp on the left rear portion of her head that required four sutures to close. She remained in the hospital but a few hours and was released. The place on the skull where struck is where the left jaw bones are connected to the skull. For some time she had headaches and suffered pain in the left jaw which was diagnosed as traumatic arthritis of the left mandibular joint. Mrs. Zilke testified that she thought the headaches were a nervous re-

action. She received medical treatment for the jaw condition and after a while she did not have any more pain.

Penal statutes are to be interpreted strictly against the state and liberally in favor of the accused. *Weirich v. State* (1909), 140 Wis. 98, 100, 121 N. W. 652; *Smith v. United States* (1959), 360 U. S. 9, 79 Sup. Ct. 991, 3 L. Ed. (2d) 1041; *State v. Di Paglia* (1955), 247 Iowa 79, 71 N. W. (2d) 601, 49 A. L. R. (2d) 1223; 50 Am. Jur., Statutes, pp. 430, 431, sec. 407; and 82 C. J. S., Statutes, p. 924 *et seq.*, sec. 389. Because of this rule, in construing sec. 939.22 (14), Stats., containing the definition of "great bodily harm," we deem that the further canon of statutory interpretation of *ejusdem generis* is applicable. The nervous headaches and pain in the jaw which Mrs. Zilke suffered and which did not endure for a protracted period are not in the same category as "permanent or protracted loss or impairment of the function of any bodily member or organ."

It is our considered judgment that Mrs. Zilke did not sustain "great bodily harm" within the meaning of sec. 939.22 (14), Stats., and, therefore, the evidence did not sustain the conviction of the defendant of the charged offense of aggravated battery. Decisions of courts of other jurisdictions which are in accord with this holding are *Minnix v. State* (Okla. 1955), 282 Pac. (2d) 772, 777, and *Gonzalez v. State* (1943), 146 Tex. Crim. Rep. 108, 172 S. W. (2d) 97.

Where, as in the instant case, the facts are undisputed as to the nature of the injury inflicted by the battery, it is a question of law and not of fact as to whether the injuries are sufficient to constitute the crime of "aggravated battery" as defined by statute.

Counsel for the defendant contend that the evidence with respect to the battery would only sustain a conviction for ordinary battery under sec. 940.20, Stats., which statute provides for a maximum imprisonment sentence of six months.

On the other hand, the state maintains that the evidence is sufficient to sustain a conviction of the offense of an attempt to commit aggravated battery, if the court should come to the conclusion that Mrs. Zilke did not sustain "great bodily harm" within the meaning of sec. 939.22(14). We deem that the state is correct in the position taken on this point.

Sec. 939.66, Stats., provides in part: "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both." Sub. (4) of such statute makes an attempt to commit the crime charged in violation of sec. 940.22 an "included crime." Sec. 939.32 (1) provides that anyone who attempts to commit a felony may be fined or imprisoned, or both, not to exceed one half the penalty for the completed crime, subject to a maximum sentence of thirty years if the completed crime carries a life sentence.

We are satisfied that the evidence would support a finding that the defendant, when he struck Mrs. Zilke, had an intent to inflict great bodily harm. He must be deemed to have intended the natural consequences of his act, and the blow struck might very easily have caused a fractured skull.

Because of the conclusion reached, the judgment of conviction of the offense of aggravated battery must be reversed and the defendant remanded to the trial court, with directions to enter a judgment of conviction of the offense of attempt to commit the crime of aggravated battery and for proper sentencing under such judgment.

### Testimonial Trustworthiness of the Confession.

Defendant at the time of the commission of the alleged offenses was twenty-six years of age, married, and had one child, a daughter three years of age. He was employed as a sales trainee by Milwaukee Crane Company located at Cudahy, Wisconsin, at an annual salary of $10,000. Defendant is a college graduate, having been graduated from

the University of Tennessee. He had no previous criminal record of any kind.

When the defendant was arrested the police found on his person forms used in betting on college basketball games. The defendant admitted to the police that he had placed bets on basketball games through a bookie and owed $70 in losses. One policeman testified that the defendant further admitted that his total losses extending over the weeks he had been placing such bets aggregated $600. The defendant upon the trial testified that his total losses aggregated but $200. In any event, at the time of arrest the defendant owed only $70 of such losses as the remainder already had been paid by him. In his confession, the defendant stated that he struck Mrs. Zilke with the wrench in order to rob the liquor store to obtain money to cover his betting losses so as to conceal such losses from his wife.

In the absence of the confession, and certain disputed statements given to the police, there is some doubt as to whether there was sufficient other evidence to support a conviction of attempted robbery. The cash register in the Zilke liquor store was at the far end of the counter opposite the outer door through which the defendant had entered, and there was no evidence that he went near the same.

On the other hand, there was strong circumstantial evidence that robbery was not the motive underlying the battery. The defendant at the time of his arrest had over $80 in money on his person and had another $90 in cash at home. His semimonthly pay check from the Crane Company in the sum of $343 had been signed by the executive vice-president of the company that morning, and could have been had by the defendant for the asking. In addition, he owned two automobiles which were unincumbered, stocks, bonds, and savings and checking accounts.

At the trial the defendant did not repudiate that part of the confession which related to the striking of Mrs. Zilke.

However, he did repudiate the part of the same which attempted to state a reason or motive for such battery. This is made very clear by the following question put to him at the trial and his answer thereto:

"*Q.* Do you know now or do you have any view now as to whether or not the reason that you gave to the police on that occasion was the reason that you hit this woman? *A.* I don't know what the reason was that I hit her. I am sure that couldn't be it. I wish I did know."

On the issue of the admissibility of the confession, the defense called Dr. Joseph A. Kindwall as a witness. Dr. Kindwall has been a practicing physician since 1927 and specializes in neuropsychiatry. At one time he served as medical director of the Milwaukee Sanitarium which provides treatment for people afflicted with mental disorders. Dr. Kindwall testified that he first examined the defendant on February 15, 1958, which was only two days after the day the defendant had committed the act for which he was prosecuted and on which his confession was obtained. The following question was then put to Dr. Kindwall by defendant's counsel:

"Now, will you give us your medical evaluation of Donald Bronston as of the beginning of the period during which you saw him or were consulted with respect to him."

The state objected to the question. The point of the admissibility of the proffered medical testimony was then argued at some length before the trial court. Counsel for the defendant clearly stated to the court that such evidence was offered for the purpose of establishing that the confession was testimonially untrustworthy. However, the trial court sustained the state's objection.

The nature of the testimony which would have been elicited from Dr. Kindwall, if he had been permitted to

answer defense counsel's questions, is apparent from the letter which Dr. Kindwall wrote to the probation department after trial. In such letter, Dr. Kindwall stated it to be his opinion that the defendant had been suffering from a profound neurosis prior to February 13, 1958, and that his conduct on that date was a manifestation of such neurosis. It was the doctor's further opinion that the real motivation for the defendant's conduct in striking Mrs. Zilke lay in unconscious hostility, not to the particular woman he struck, but to someone she represented to him subconsciously. It is the further contention of defendant's counsel that, if Dr. Kindwall had been permitted to testify, his testimony would have been that a person, in the state of neurosis in which the defendant was, tries to find other reasons or explanations for his actions than the true one, because the true explanation or reason is repellent to the conscious level of such individual.

We are satisfied that it was error to refuse to admit Dr. Kindwall's testimony even though there was no claim that the defendant's neurosis constituted legal insanity. Such testimony would have been material on the issue of the testimonial trustworthiness of the confession. Evidence of the mental condition or qualities of the accused at the time of making the alleged confession is always material for such purpose. This court has held that the test to be applied in determining the admissibility of confessions made to law-enforcement officers is not solely whether they were obtained with physical force, threats, or promises of leniency, but whether they are given under such circumstances as to make them testimonially trustworthy and worthy of belief. *State v. Stortecky* (1956), 273 Wis. 362, 376, 377, 77 N. W. (2d) 721; *Kiefer v. State* (1950), 258 Wis. 47, 53, 44 N. W. (2d) 537; *State v. LaPean* (1945), 247 Wis. 302, 313, 19 N. W. (2d) 289 (certiorari denied (1945), 326

U. S. 801, 66 Sup. Ct. 486, 90 L. Ed. 488). See also 3 Wigmore, Evidence (3d ed.), p. 246 *et seq.,* sec. 822.

This court in *State v. LaPean, supra,* cited with approval the following quotation from 22 C. J. S., Criminal Law, p. 1428, sec. 817:

"Whether a confession is voluntary or, in other words, testimonially worthy depends largely upon the facts of the particular case. In determining this question, factors which are proper to be considered include the sex, age, character, disposition, education, and previous training of accused, *his mental qualities,* his physical health, and his surroundings, as well as the nature, content, and import of the confession itself." (Emphasis supplied.)

Authorities from other jurisdictions have concluded that evidence as to the mental capacity of the defendant is admissible to establish the untrustworthiness of a confession and the weight it should be afforded. 22 C. J. S., Criminal Law, p. 1451, sec. 828; *People v. Isby* (1947), 30 Cal. (2d) 879, 186 Pac. (2d) 405, 416; *State v. Ratkovich* (1940), 111 Mont. 19, 105 Pac. (2d) 679, 682; and *People v. Joyce* (1922), 233 N. Y. 61, 134 N. E. 836. We deem it immaterial whether the evidence relates to some permanent impairment of mental capacity, or to a neurosis which affects the mental condition or capacity of the defendant at the time of confession but which may not be of a permanent nature.

*Pollack v. State* (1934), 215 Wis. 200, 217, 253 N. W. 560, 254 N. W. 471, lays down the rule that the admissibility of a confession is in the first instance for the court; but, if there is doubt as to whether it was voluntarily given, then the issue of the trustworthiness should be submitted to the jury with proper instructions. This is the proper rule to be applied in a situation, such as the instant one, where the testimonial trustworthiness of the confession is attacked on the ground of the mental condition or incapacity of the defendant.

Where, as in the instant case, the trial was to the court without a jury, if the court has reasonable doubt as to the testimonial trustworthiness of the confession, the court should reject the same. This is because the burden of proving the testimonial trustworthiness of the confession is on the state. *Farino v. State* (1931), 203 Wis. 374, 381, 234 N. W. 366.

The defendant Bronston, although represented by able counsel, filed no motion for new trial grounded upon error committed during trial. While a majority of the court are of the opinion that the exclusion of Dr. Kindwall's proffered testimony constituted prejudicial error, we are not convinced there was a miscarriage of justice so as to require that we invoke our discretionary power to grant, under sec. 251.09, Stats., on our own motion, a new trial in the prosecution for attempted robbery.

The relief which the defendant seeks on this appeal is to have this court rule as a matter of law that the confession was testimonially untrustworthy, and to further hold that without such confession there is insufficient evidence to uphold the conviction of attempted robbery.

In passing on the issue of the testimonial trustworthiness of the confession we cannot consider what Dr. Kindwall might have testified to as to the defendant's neurosis. If such testimony had been given it would have been subject to cross-examination by the state, and the state would have had the right to offer expert rebuttal testimony. As the record stands, there is nothing therein which would warrant this court ruling as a matter of law that the confession was testimonially untrustworthy because of the defendant's mental condition.

Counsel for the defendant also attack the trustworthiness of the confession on the further ground that the calling in of the police stenographer to record Inspector Glaser's questions and the defendant's answers thereto amounted to a

form of compulsion which would make the confession involuntary. In support of such contention the cases of *Bianchi v. State* (1919), 169 Wis. 75, 171 N. W. 639, and *Flamme v. State* (1920), 171 Wis. 501, 177 N. W. 596, are cited. In those cases confessions were determined to have been involuntarily given because an oath was administered to the defendants by the law-enforcement officials as a condition precedent to obtaining their confessions. The opinion in the *Bianchi Case* makes it clear that the rationale of such holding is that where a defendant has an oath administered to him he is induced thereby to believe that he is under a compulsion to answer the questions put to him.

We do not believe that the calling in of the police stenographer in the instant case induced this intelligent and well-educated defendant to believe he was under any more compulsion to answer the questions put to him than if such stenographer had not been present. Therefore, the rule of the *Bianchi* and *Flamme Cases* has no application here.

It is our conclusion that the confession was properly received in evidence by the trial court and that there was sufficient corroborating evidence to sustain the conviction. A confession does not have to be corroborated in every detail in order to sustain a conviction. *Potman v. State* (1951), 259 Wis. 234, 243, 244, 47 N. W. (2d) 884.

### Denial of Due Process.

The two main grounds upon which counsel for the defendant contend that the confession should be invalidated because of alleged denial of due process are: (1) The defendant was detained an unreasonable length of time between his arrest and his arraignment; and (2) he was not advised of his constitutional right not to answer questions which would incriminate him.

The defendant was arrested at 9:30 a. m. and was arraigned in the district court of Milwaukee at 2:30 p. m. of

the same day. We do not deem that this constituted an unreasonable length of time between arrest and arraignment. The rule that an unreasonable period of detention between arrest and arraignment will invalidate a confession obtained in such period was announced by the United States supreme court in *McNabb v. United States* (1943), 318 U. S. 332, 63 Sup. Ct. 608, 87 L. Ed. 819. However, such rule is confined to federal criminal prosecutions and is not a limitation imposed upon the states by the due-process clause of the Fourteenth amendment. *Gallegos v. Nebraska* (1951), 342 U. S. 55, 63, 64, 72 Sup. Ct. 141, 96 L. Ed. 86.

The defendant was not advised by the police officials at the time of his interrogation of his right under sec. 8, art. I, Wis. Const., to refuse to answer questions that might incriminate him. Confessions are not necessarily inadmissible for failure to advise of the constitutional right against self-incrimination. *Link v. State* (1935), 217 Wis. 582, 586, 259 N. W. 428, 261 N. W. 416; and *State v. Whatley* (1933), 210 Wis. 157, 168, 245 N. W. 93. In the instant case we are convinced that the defendant, because of his intelligence and education, and the newspaper and magazine publicity that has been given in the past few years to the right of citizens against self-incrimination, was well aware of such right at the time of his interrogation. However, we commend the practice of law-enforcement officers informing arrested persons accused of crime of such constitutional right before questioning them. This was done in *State v. Fransisco* (1950), 257 Wis. 247, 43 N. W. (2d) 38.

In the opinion in the *Fransisco Case* this court quoted the following extract from the earlier case of *Esterra v. State* (1928), 196 Wis. 104, 108, 219 N. W. 349:

"The statement made by the defendant to the district attorney appears to have been voluntarily made. There were no third-degree methods applied, no threats, no inducements held out to the defendant to make his statements. *He clearly*

*understood his right to refuse to make any admission,* and that he was not under any compulsion to do so. Admissions so made were properly introduced in evidence." (Emphasis supplied.)

The italicized words of such quotation imply that a confession would be inadmissible if obtained from a person of such limited education or mentality that he was unaware of such right against self-incrimination, and was not informed of the same by law-enforcement officers before obtaining his confession.

It is our considered judgment that there was no violation of due process in the instant case which invalidated the defendant's confession.

*By the Court.*—The judgment in the prosecution for aggravated battery is reversed, and the case remanded for further proceedings not inconsistent with this opinion; the judgment in the prosecution for attempted robbery is affirmed.

MARTIN, C. J., took no part.

FAIRCHILD, J. (*dissenting in part; concurring in part*). With respect to the charge of aggravated battery, it is my conclusion that the evidence describing Mrs. Zilke's head injury was sufficient to make it a question of fact whether or not it was "serious bodily injury." The court having found as a fact that it was such injury, I would affirm the judgment on that charge.

With respect to the charge of attempted robbery, I concur in the affirmance of the conviction, but am of the opinion that upon the record presented it was unnecessary to determine that it was error to refuse to admit Dr. Kindwall's testimony.

The following opinion was filed October 6, 1959:

CURRIE, J. (*on motion for rehearing*). We are satisfied that it was improper for this court to have directed the circuit court to enter a new judgment convicting the defendant of the offense of attempt to commit the crime of aggravated battery. Such finding of guilt is one to be made by the trial court as finder of the facts, a jury having been waived. We modify our original opinion with respect to this feature of the appeal to merely hold that the evidence is sufficient to substantiate such a finding of guilt if the trial court should see fit to make it. No change in the original mandate is required because of this inasmuch as that part of the case, which related to the charge of aggravated battery, was remanded for further proceedings not inconsistent with the opinion.

The other points raised in the briefs on the motion for rehearing have been carefully considered and it is our conclusion that our original opinion should stand except as modified above.

*By the Court.*—The motion for rehearing is denied without costs.