IRBY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 56. Argued December 4, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 251.)

For the plaintiff in error there was a brief and oral argument by *Curtis M. Kirkhuff* of Madison.

For the defendant in error the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

CONNOR T. HANSEN, J. The defendant and his brother, Sampson, were both charged with the same offense, arising out of the same incident, and were tried jointly.

Charles Harris, the victim, was a bartender and co-owner of a tavern in Madison, Wisconsin. August 4, 1968, Sampson had caused some trouble in the tavern where Harris was tending bar. Harris called the police and the police escorted Sampson out of the tavern. Before he left the tavern, Sampson threatened to get even with Harris.

The next evening Harris was again tending bar and Sampson and the defendant entered the tavern. Harris testified when he saw them enter, Sampson had a knife in his hand, which was at his side; and the defendant had a knife in his hand, which was held over his head. Words were exchanged and when Harris attempted to call the police, Sampson leaned across the bar and stabbed him in the right shoulder. He picked up a pool cue, started swinging it, and the Irby brothers backed out of the door and he locked it.

There were two patrons in the tavern who left in haste when the trouble started. One of them was going to a filling station a block away to call the police. Two

nephews of Harris were in an automobile nearby and were notified of the incident by this patron. Harris testified he saw his two nephews approaching the tavern and the two Irbys going toward them threatening them. He went outside, warned his nephews and tried unsuccessfully to get Irbys' attention away from his nephews and back to himself. He had brought a bar stool into the street to use in defending himself. When he swung it at the defendant it slipped from his blood covered hand. By the time the police arrived, the defendant had stabbed one of the nephews in the back and inflicted a wound to Harris in the region of the lower anterior-lateral chest, with what Harris described as a strong blow to the stomach, cut his face, and caused four lacerations to his right arm. Harris was taken to the hospital in an apparent unconscious condition by the police, where he remained for a week, spending the first two-and-one-half days in intensive care because of a collapsed lung and because the degree of bleeding indicated the severance of an intercostal artery or vein in the lower chest area. He lost approximately a pint of blood due to internal bleeding and approximately another pint due to external bleeding.

Sampson testified he neither had a knife, nor stabbed anyone. The defendant testified he stabbed Harris outside the tavern in self-defense.

Four issues are raised on appeal.

(1) Was there sufficient evidence to support a finding that the wounds inflicted by the defendant caused great bodily harm?

(2) Was the defendant denied due process by the trial court's refusal to order the state to disclose the names of witnesses prior to trial?

(3) Did the trial court abuse its discretion in denying the defendant's motion for a separate trial?

(4) Did the trial court err in refusing to limit the self-defense instruction to the defendant, Leon Irby, alone?

*The nature of the injuries inflicted by the defendant.*

The defendant contends that there was insufficient evidence to support a finding that the wound inflicted by him caused great bodily harm.

To support a conviction of aggravated battery, it is necessary that the defendant cause great bodily harm to another.

"940.22 **Aggravated battery.** Whoever intentionally causes great bodily harm to another by an act done with intent to cause bodily harm to that person or another may be fined not more than $2,500 or imprisoned not more than 5 years or both."

The term "great bodily harm" is defined by sec. 939.22 (14), Stats.:

" (14) 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury."

The question then becomes, whether, under the facts of this case, the injuries sustained by Harris constitute great bodily injury as defined by sec. 939.22 (14), Stats. The evidence in this case presents a question of fact for the jury. The trial court properly instructed the jury on the elements of the crime. The evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.

In *State v. Bronston* (1959), 7 Wis. 2d 627, 633, 97 N. W. 2d 504, 98 N. W. 2d 468, this court stated that where the facts are not in dispute, it is a question of law whether the injury inflicted constituted great bodily injury.

"Where, as in the instant case, the facts are undisputed as to the nature of the injury inflicted by the battery, it is a question of law and not of fact as to whether

the injuries are sufficient to constitute the crime of 'aggravated battery' as defined by statute.''

In *State v. Bronston, supra,* this court held that evidence concerning the nature of the injury was insufficient to show great bodily harm and, therefore, the evidence would not support a conviction of the crime of aggravated battery. In that case the injury was inflicted by the defendant striking the victim on the head with a wrench. The injury was described as follows:

"Mrs. Zilke's injury resulting from the blow consisted of a two-inch laceration of the scalp on the left rear portion of her head that required four sutures to close. She remained in the hospital but a few hours and was released. The place on the skull where struck is where the left jaw bones are connected to the skull. For some time she had headaches and suffered pain in the left jaw which was diagnosed as traumatic arthritis of the left mandibular joint. Mrs. Zilke testified that she thought the headaches were a nervous reaction. She received medical treatment for the jaw condition and after a while she did not have any more pain." *State v. Bronston, supra,* 632, 633.

The facts of the instant case readily distinguish it from *Bronston.* In *Bronston,* there appears to be no factual dispute regarding the relatively minor injury inflicted upon the victim. In this case the record is replete with conflicting testimony concerning the incidents both inside and outside the tavern. It would serve no useful purpose to here review them in detail.

The attending physician testified that the shoulder wound, apparently inflicted by Sampson, although he denied having a knife or stabbing the victim, probably caused the collapsed lung, and at the time there existed a high probability of death. The chest wound caused considerable bleeding because of the severance of an intercostal artery or vein in the lower chest area. There is nothing in the testimony of the doctor to indicate that he in any way treated the chest wound as minor.

Defendant also contends that the testimony of the doctor and the form of the questions put to him did not meet the proper standard for opinion. An examination of the record reflects that many of the questions put to the doctor were in the form of inquiries as a reasonably medical certainty. In *State v. Muhammad* (1968), 41 Wis. 2d 12, 24, 162 N. W. 2d 567, this court stated it is preferable to ask for a medical opinion couched in terms of a reasonable degree of medical certainty. However, many of the questions asked in this case did not call for an opinion but for a statement of fact based upon the doctor's personal knowledge, examination and treatment of Harris. He testified as a treating physician.

As we understand the argument advanced by the defendant, he would have this court determine that a conviction under sec. 940.22, Stats., must be supported by testimony of a doctor with an opinion to a reasonable medical certainty as to the type of injury inflicted in order for the state to prove the injury fell within those described in sec. 939.22 (14). We make no such determination in this case. Under the facts of this case the doctor's testimony was necessary to determine the seriousness of the wounds, and it was within the province of the jury to determine whether, as a matter of fact, these wounds caused great bodily harm. The jury made a proper determination based upon the evidence as we have reviewed the record.

*Failure of the trial court to compel pretrial disclosure of the names of witnesses.*

The complaint was signed by Detective McCarthy of the Madison police department. After alleging the existence of facts constituting battery, the complaint states:

". . . That the complainant is a detective with the Madison Police Department and is in charge of the investigation of this case. That during said investigation, he questioned the said Charles Harris and witnesses to

the occurrence. The information contained herein was received from Mr. Harris and the said witnesses. . . ."

At the preliminary hearing, counsel for the defendant called Detective McCarthy for questioning and asked him the names of the persons to whom he talked which formed the basis of the facts for the complaint. An objection to the question was sustained. Counsel for the defendant indicated that the purpose of the questioning was to obtain disclosure of the names of witnesses that may be called at the trial.

Subsequent to the preliminary hearing, counsel for the defendant moved the trial court for an order requiring the state to produce Detective McCarthy for further questioning. In denying the motion, the trial court stated:

"We have no reason to believe that the district attorney has witnesses to the events which are alleged to have occurred at the Tuxedo Lounge whose names are not disclosed. There is no law in Wisconsin that requires that the preliminary hearing be turned into a discovery examination, although it sometimes becomes that. If the defendants wished to make inquiry as to the validity of the complaint and the basis therefor it should have been done before the preliminary hearing. The preliminary hearing has established probable cause. Having done so, there is no reason to inquire into the basis for the complaint on which the warrant was issued."

There is no allegation that the state suppressed exculpatory evidence. The defendant contends, however, that the failure of the trial court to compel the disclosure of the names of witnesses constituted a denial of due process.

Sec. 971.23 (3) (a), Stats. 1969, provides a means by which the defendant may obtain from the state a list of the witnesses the state intends to call:

"(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to

furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial. This section shall not apply to rebuttal witnesses or those called for impeachment only."

That section became effective July 1, 1970, subsequent to the conviction of the defendant in the present case. Prior to the enactment of that statute, Wisconsin did not recognize the right of pretrial discovery:

"Wisconsin does not recognize a right of a defendant to pretrial discovery of the prosecution's evidence in a criminal proceeding. *Santry v. State* (1886), 67 Wis. 65, 30 N. W. 226; *State ex rel. Byrne v. Circuit Court* (1962), 16 Wis. 2d 197, 198, 114 N. W. 2d 114.

" . . .

"The matter of pretrial discovery in criminal proceedings has recently come before this court on at least three occasions.

"In *State v. Miller* (1967), 35 Wis. 2d 454, 478, 151 N. W. 2d 157, we determined that if pretrial discovery procedure in criminal cases were to be adopted in Wisconsin it would best be done by formal rule of court through statutory procedure or through legislative action rather than on a case to case basis by this court. This same position has been reiterated in *Ramer v. State* (1968), 40 Wis. 2d 79, 161 N. W. 2d 209, and *Watkins v. State* (1968), 40 Wis. 2d 398, 162 N. W. 2d 48." *State ex rel. Johnson v. County Court* (1968), 41 Wis. 2d 188, 192, 193, 163 N. W. 2d 6.

In *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1, decided at the time sec. 971.23, Stats., was a proposed bill, this court reaffirmed the rule of prior cases that the right to pretrial discovery would not be dealt with on a case-by-case basis.

In *Abraham v. State* (1970), 47 Wis. 2d 44, 176 N. W. 2d 349, this court refused to apply sec. 971.23 (4), Stats., dealing with pretrial notice of physical evidence, retroactively to cover a conviction occurring prior to July 1, 1970.

We find no denial of due process for not compelling disclosure of the names of state witnesses.

*Refusal of the trial court to sever the trials.*

Defendant's trial court motion for a separate trial on the ground of inconsistent defenses was denied. There was testimony that Harris was stabbed once by Sampson Irby inside the tavern, and several times by the defendant outside the tavern. Defendant admitted stabbing Harris, but alleged self-defense. Sampson Irby denied he ever stabbed Harris. The defendant contends that these constituted antagonistic defenses and that under the facts of the case the trial court abused its discretion in refusing to grant separate trials.

In *State v. Laabs* (1968), 40 Wis. 2d 162, 171, 161 N. W. 2d 249, this court stated the following with regard to an alleged abuse of discretion in denying a motion for severance:

"Whether a joint trial of codefendants for their respective conduct in relation to a single episode is unduly prejudicial to each defendant is a matter within the discretion of the trial judge. *State v. Nutley, supra; Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723; *Kluck v. State* (1937), 223 Wis. 381, 269 N. W. 683; *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471.

"A defendant may obtain a severance if a joint trial would be prejudicial to his individual interest. In *State v. Nutley, supra,* at 543, we discussed what constitutes prejudice in this context:

"' "Prejudice" in this sense, means that an entire line of evidence relevant to the liability of only one defendant may be treated as evidence against all defendants by the

trier of fact simply because they are tried jointly. Again, if the defendants assert antagonistic defenses, they will often face the double burden of meeting the attack of both the prosecution and their codefendants. Therefore, we have held that if codefendants assert antagonistic defenses, they are entitled to separate trials.' "

In this case there was no testimony that the defendant stabbed Harris inside the tavern. Thus, Sampson's denial that he stabbed Harris was not prejudicial to the defendant and this denial was not antagonistic to the defendant's claim that he was acting in self-defense when he stabbed Harris outside the tavern.

*Refusal of the trial court to limit the self-defense instruction to the defendant, Leon Irby, alone.*

At the conclusion of the trial, counsel for the defendant requested that the trial court limit the self-defense instruction to the defendant alone. The trial court denied this request, ruling that there was evidence on which the jury could find that Sampson Irby acted in self-defense. Defendant now contends that there was no evidence that Sampson acted in self-defense.

Sampson Irby denied that he ever stabbed Harris. However, the defendant testified that he saw Harris swinging at his brother with a black object in his hand and saw Harris come around the bar toward his brother. In the event that the jury did believe that Sampson stabbed Harris, it could have found he did so in self-defense. Sampson was, therefore, entitled to the self-defense instruction.

Defendant contends that the failure of the trial court to limit the instruction was prejudicial to him because the jury was instructed that the "singular" applied to both defendants. However, the trial court did so in connection with instructing the jury as to what constitutes aggravated battery. The jury was specifically instructed that it should judge the guilt or innocence of each de-

fendant separately. Therefore, even if the self-defense instruction was not applicable to Sampson, it does not appear that the failure of the trial court to limit the instruction to the defendant alone was prejudicial to him.

*By the Court.*—Judgment affirmed.