BINDER, Plaintiff-Appellant, v. CITY OF MADISON, and another, Defendants-Respondents.

*No. 168 (1974). Argued January 5, 1976.—Decided May 14, 1976.*
(Also reported in 241 N. W. 2d 613.)

For the appellant there was a brief by *James P. Brennan* and *Simarski, Goodrich, Brennan & Stack* of Milwaukee, and oral argument by *James P. Brennan.*

For the respondent City of Madison the cause was argued by *Robert E. Olsen,* assistant city attorney, with whom on the brief was *Henry A. Gempeler,* city attorney.

For the respondent Area Vocational, Technical and Adult Education District No. 4 there was a brief by *Stafford, Rosenbaum, Rieser & Hansen,* and oral argument by *John M. Koeppl* all of Madison.

A brief amicus curiae was filed by *Jean G. Setterholm* and *Paul J. Swain* of Madison, for the League of Wisconsin Municipalities.

Day, J.  The order appealed from sustains the demurrer of the defendant, city of Madison ("City"). Summary judgment was granted in favor of the other defendant, Area Vocational, Technical and Adult Education District No. 4 ("VTAE District").

The issues on appeal concern the application and constitutionality of state statutes[1] requiring that one

[1] "62.25  **Claims and actions.** (1) CLAIMS. (a) No action shall be maintained against a city upon a claim of any kind until the claimant shall first present his claim to the council and it is disallowed in whole or in part. Failure of the council to pass upon the claim within 90 days after presentation is a disallowance."

"118.26  **Claim against school district.** An action upon any claim shall not be maintained against a school district until the claim has been presented to the school board of the district and disallowed in whole or in part. Failure of the school board to allow the claim within 60 days after it is filed with the school district clerk is a disallowance. The school district clerk shall serve notice of disallowance on the claimant by registered mail with return receipt signed by the claimant required. Such receipt shall be proof of service. The claimant may accept a portion of his claim without waiving his right to recover the balance. No interest may be recovered on an allowed claim after an order of the school board is available to the claimant. If the claimant recovers a greater amount than was allowed by the school board he shall recover costs; otherwise the school board shall recover costs. No action on a claim may be brought after 6 months from the date of service of the notice of disallowance."

"895.43  **Tort actions against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of injury; limitation of damages and suits.** (1) No action founded on tort, except as provided in s. 345.05, shall be maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of such corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage signed by the party, his agent or attorney is served on such volunteer fire company, political corporation,

tortiously injured on public property give notice of the injury, and file claims with the appropriate agency, as a prerequisite to maintaining a court action.

The complaint in this action alleges that on July 3, 1970, the plaintiff, Kenneth C. Binder, in the course of his employment with American District Telegraph Company, was installing an alarm system in the auditorium located in the Madison Area Technical College, a building operated by the VTAE District, to which title was held by the City. While working in an area above the auditorium's ceiling, Mr. Binder stepped on a glass skylight and fell through to the auditorium floor, resulting in serious and permanent personal injuries. He was rendered unconscious "for a long period of time," and hospitalized for a "sustained period." The complaint alleges a cause of action under the safe-place statute, and an alternative cause of action in common law tort, on the basis of defendants' failure to provide adequate lighting, to warn Mr. Binder of the skylights (which had been painted grey, the same color as the rest of the floor above the ceiling), and to provide catwalks.

This action was commenced on June 21, 1973, by service of a summons upon each of the defendants. This was a few days before the expiration of the three-year statute of limitations, sec. 893.205, Stats. Mr. Binder, however, concedes that he had not given formal notice of his injury within 120 days of the accident, pursuant to sec. 895.43 (1), to either defendant. Moreover, he had not filed a claim for damages with either the city council

governmental subdivision or agency and on the officer, official, agent or employe under s. 262.06. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the damage or injury and the injured party shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe."

or the VTAE District as required by secs. 65.25 and 118.26.

The City demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. Specifically, the City alleged that Binder had not filed a claim pursuant to sec. 65.25, Stats. On January 24, 1974, the trial court issued a written decision sustaining the City's demurrer on this basis, and the action was dismissed. Under the statute, the City's demurrer was properly sustained. To maintain a suit against a city (as contrasted to merely commencing such a suit) it is necessary to specifically plead that the plaintiff has presented a claim to the city council in compliance with sec. 62.25. In *Foreway Express, Inc. v. Hilbert* (1966), 32 Wis. 2d 371, 373, 145 N. W. 2d 668, this court said:

". . . we conclude that under sec. 62.25 (1) (a) a complaint in a tort action against a village or a city is demurrable when the complaint fails to allege that a claim has been presented to the board or council and has been disallowed."

*See also: Schwartz v. Milwaukee* (1969), 43 Wis. 2d 119, 126, 168 N. W. 2d 107; *Sambs v. Nowak* (1970), 47 Wis. 2d 158, 177 N. W. 2d 144. In the present case, compliance with sec. 62.25 was not pleaded; and it is conceded that there was in fact no claim presented.

The VTAE District filed an answer with affirmative defenses and a "plea in bar" alleging that Mr. Binder had failed to file a claim with the VTAE District Board pursuant to sec. 118.26, Stats., and had failed to give notice of injury within 120 days pursuant to sec. 895.43. The VTAE District then moved for summary judgment, providing in support of this motion an affidavit of the secretary of the VTAE District Board, stating that no notice of injury and no notice of claim had been filed by Mr. Binder with the board. Mr. Binder presented no counteraffidavits to refute defendant's claim of lack of

notice, and concedes that no notice of claim was given pursuant to sec. 118.26, but claims that no such notice is required in this case because a vocational school district is not a "school district" within the meaning of sec. 118.26. Defendant challenges the right of Mr. Binder to raise this issue, since it was not raised in the trial court. Mr. Binder has no appeal of right. Because the issue involves a question of law rather than of fact, and has been briefed by both sides, we hold that it is one of sufficient public interest to merit decision. *State v. Conway* (1967), 34 Wis. 2d 76, 82, 83, 148 N. W. 2d 721; *State ex rel. General Motors Corp. v. Oak Creek* (1971), 49 Wis. 2d 299, 319, 182 N. W. 2d 481.

School district is defined for purposes of Title XIV of the statutes (which includes ch. 118) in sec. 115.01 (3), Stats.[2] Plaintiff argues that since the statute does not specifically mention VTAE districts, they should not be considered "school districts" for purposes of sec. 118.26, and that since no comparable statutory provision requiring presentation of a claim is contained in ch. 38, Stats., which concerns VTAE District functions specifically, the VTAE District does not benefit from any notice-of-claim requirement. He also emphasizes that the distinction between the old local VTAE *boards*, which could be sued in the name of their parent municipality or school district[3] and therefore benefited from notice-of-claim stat-

[2] "GENERAL CLASSIFICATIONS AND DEFINITIONS
"115.01 Classifications and definitions.
". . .
"(3) SCHOOL DISTRICTS. The school district is the territorial unit for school administration. School districts are classed as common school districts, union high school districts, unified school districts, city school districts and school systems organized pursuant to ch. 119. A joint school district is a school district whose territory is not wholly in one municipality."

[3] Sec. 138.15 (17), Stats 1969: "(17) (a) Said local board shall have exclusive control of the schools established by it and

utes applicable to those bodies, and the new VTAE *districts* authorized by sec. 41.155, Stats. 1965 (later sec. 38.155, Stats. 1969), which are independent of local control and specifically authorized to sue and be sued in their own right,[4] and for which no separate notice-of-claim statute is provided.

We agree with the VTAE District that there is no evidence of a legislative intent to deprive VTAE districts of the notice-of-claim protection that their predecessor agencies enjoyed for nearly 50 years during which they were subsidiaries of municipalities and school boards, and could take advantage of those bodies' notice-of-claim statutes. In 1965, VTAE districts came into being as independent entities. In the original statute providing for their organization, sec. 41.155 (1), Stats. 1965, they were specifically referred to as "school districts."[5] Although this description was subsequently dropped, there is nothing to indicate that when the VTAE districts were made separate entities with the power to sue and be sued in their own name, independent of either

---

over all property, acquired for the use of said schools, except as otherwise provided by the statutes. Said board may sue and be sued in the name of the municipality or school district, and may prosecute or defend all suits brought under this section."

[4] Sec. 38.155 (12) (a), Stats. 1969: "(12) (a) The district board shall have exclusive control of the school established by it and over all property, acquired for the use of said schools, except as otherwise provided by statute. The district board may sue and be sued in the name of the district, and may prosecute or defend all suits brought under this section."

[5] "41.155 **Vocational, technical and adult education districts.**

"(1) Beginning as soon after September 29, 1965 as practicable, the co-ordinating committee for higher education, in conjunction with the state board of vocational, technical and adult education, shall prepare a proposed master plan for vocational, technical and adult education districts. By July 1, 1970, the state board of vocational, technical and adult education shall act to include all areas in such *school districts of vocational, technical and adult education* as the state board designates." (Emphasis supplied.)

municipalities or school districts, they were no longer to be considered school districts for purposes of sec. 118.26. Section 115.01 (3), on which Mr. Binder relies, has remained unchanged in any relevant way since before the independence of VTAE districts[6]—since the time when VTAE boards were covered by sec. 118.26. We find it impossible to infer from the legislature's failure to amend sec. 115.01 (3) an intent to exclude VTAE districts from notice-of-claim processes applicable to school districts and local governments generally. In light of this history, we conclude that the doctrine of *expressio unius est exclusio alterius* is inapplicable to the construction of sec. 115.01 (3). *Columbia Hosp. Asso. v. Milwaukee* (1967), 35 Wis. 2d 660, 669, 151 N. W. 2d 750. VTAE districts are covered by sec. 118.26, and summary judgment was properly granted.

Because this holding is dispositive of this case, it is not necessary to discuss Mr. Binder's contention that summary judgment was not appropriate under sec. 895.43 (1), Stats., because of the possibility of "actual notice" under that statute.

Mr. Binder also seeks to challenge the constitutionality of secs. 62.25, 118.26, and 895.43, Stats., on the ground that these statutes deny "equal protection of the laws" to persons injured by governmental, as opposed to private, tort-feasors. No attack on the constitutionality of these sections was made at the trial court level. As with any other issue not raised in the trial court, this court will generally not review constitutional questions raised for the first time on appeal. *Wisconsin Power & Light Co. v. Dean* (1957), 275 Wis. 236, 242, 81 N. W. 2d 486. There are, of course, exceptions to this rule. *Sambs v. Brookfield* (1975), 66 Wis. 2d 296, 314, 224 N. W. 2d 582. In *Hortonville Ed. Asso. v. Joint Sch.*

---

[6] *See:* sec. 40.01 (3), Stats. 1963.

*Dist. No. 1* (1975), 66 Wis. 2d 469, 479, 225 N. W. 2d 658:

"The general rule is that issues not presented to the trial court will not be considered for the first time on appeal. *Estate of Scherffius* (1974), 62 Wis. 2d 687, 696, 697, 215 N. W. 2d 547; *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis. 2d 92, 103, 104, 186 N. W. 2d 236. With respect to constitutional issues, this court had said it may, in its discretion, consider such issues for the first time on appeal if it is in the interest of justice to do so and there are no unresolved factual issues. *State v. Morales* (1971), 51 Wis. 2d 650, 654, 187 N. W. 2d 841; *Bradley v. State* (1967), 36 Wis. 2d 345, 359, 359a, 153 N. W. 2d 38, 155 N. W. 2d 564."

*See also: State v. Weidner* (1970), 47 Wis. 2d 321, 323, 177 N. W. 2d 69.

As to sec. 895.43 (1), Stats., there are unresolved questions of fact concerning the VTAE District's "actual notice" of Mr. Binder's injury. If "actual notice" were given, this statute would not bar Mr. Binder's suit, and no constitutional issue would be raised. Because of the factual issue, the constitutionality of sec. 895.43 (1) will not be considered.

There are no unresolved questions of fact with respect to secs. 62.25 and 118.26, Stats., and we may consider the claimed denial of equal protection. The obvious burden placed on victims of governmental tort-feasors by these statutes is the burden of filing a claim; this is apparently the only burden to which plaintiff objects. Since the required substance of the claim is certainly no more complicated than that of a complaint in a civil action, the additional burden of filing such a claim appears negligible, relating mainly to the possible delay during the statutory disallowance period of 60 or 90 days (depending on which statute is involved) before court action may be brought. The effect of this delay may be viewed

as a shortening of period allowed under the statute of limitations (in this case from three years to two years and nine or ten months), since a plaintiff must file a claim within that period in order to preserve his right to commence judicial action if the claim is rejected. We do not regard this discrimination as onerous. In *Lunday v. Vogelmann* (Iowa 1973), 213 N. W. 2d 904, the Iowa supreme court upheld against an equal protection attack a statute far more restrictive of plaintiff's rights against municipalities than those before us: In Iowa, an action for damages must be commenced within three months of injury, or notice of the injury given within 60 days (with an additional period of up to 90 days allowed in cases of incapacitation).

The only other burden placed on plaintiffs by secs. 62.25 and 118.26, Stats., is the requirement that suit be commenced within six months of disallowance of the claim. However, inasmuch as the plaintiff may choose when to file his claim with the city or school district, he may also freely determine when he will start his court action (within the outer boundary of the statute of limitations).

The requirements of secs. 62.25 and 118.26, Stats., do not place any substantially discriminatory burden on plaintiffs injured by public tort-feasors. Even supposing that the burden were a serious one, the standard of "equal protection" review in this court requires only that there be a rational basis for separate classification of parties injured by public tort-feasors. *Omernik v. State* (1974), 64 Wis. 2d 6, 18, 19,[7] 218 N. W. 2d 734.

[7] "A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. The tests to be applied in determining whether there has been a reasonable legislative classification in this

The City and VTAE District advance plausible reasons for distinguishing victims of public tort-feasors from those of private tort-feasors including:

(1) The public tort-feasor has an opportunity to negotiate a compromise without suit.

(2) The public tort-feasor may conduct a timely investigation of public property, to determine liability and prevent future accidents. The nature of much public property is such as to make it difficult to maintain, and impossible to maintain in completely safe condition at all times.

(3) Since claims are paid out of public funds, the public has a special interest in prompt and efficient settlement of them which it does not have in the case of private litigants. Quick settlement minimizes budget planning problems.

(4) The notice requirement of sec. 895.43 insures that the proper officials are informed of accidents.

We hold that there is a sufficient difference between the far-flung public properties and most private property to justify the rather minor differences in tort recovery procedures created by the statutes attacked here.

---

state are fivefold: (1) All classification must be based upon substantial distinctions; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation. The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine."

We therefore hold that there is no lack of equal protection under the constitution, even if the area of governmental tort liability can be said to be subject to ordinary equal protection analysis, an assumption on which the cases cast serious doubt, but which need not be adjudicated here.[8] We find it highly significant that the cases principally relied upon by Mr. Binder come from jurisdictions which have legislatively waived tort immunity in the circumstances presented, such as to put governmental units "on an equal footing with private tortfeasors," *Reich v. State Highway Department* (1972), 386 Mich. 617, 194 N. W. 2d 700, 702, or to "have its [the state's] liability determined in accordance with the same rules of law as are applied to civil actions against individuals and corporations," *Turner v. Staggs* (1973), 89 Nev. 230, 510 Pac. 2d 879, 881. Although the Michigan and Nevada courts did not discuss the standard of constitutional review applied, it seems reasonable to require a higher degree of justification for statutory restrictions on plaintiffs where sovereign immunity has been completely waived, than where, as in Wisconsin, the right of the state to condition waiver of sovereign immunity has been specifically reserved. The Iowa Supreme Court has specifically recognized that a broad legislative

---

[8] In *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618, this court abrogated the defense of sovereign immunity, but did not, of course, change the constitutional stricture that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state" (Art. IV, sec. 27). *Holytz* specifically mentioned the legislative power to set conditions on recovery similar to those at issue here:

"The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort. *See, for example,* the notice provisions and the limitation of the amount of damages in sec. 81.15, Stats." *Holytz,* page 40.

prerogative would be accorded to statutes conditioning the derogation of sovereign immunity. *Lunday v. Vogelmann, supra.*

We conclude that secs. 65.25 and 118.26, Stats., do not contravene equal protection provisions of the United States Constitution.

*By the Court.*—Order and judgment affirmed.

This court extensively discussed *Holytz* and the subsequent development of governmental tort law in *Cords v. State* (1974), 62 Wis. 2d 42, 214 N. W. 2d 405, where a suit against the state directly was barred upon assertion of sovereign immunity. Reaffirming the continuing existence of sovereign immunity except where the state has consented to suit, the court specifically rejected an argument that a statutory scheme which allows suit against the state in some cases and denies it in others is a violation of equal protection and due process principles.