CHEATHAM, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76-453-CR. Argued September 7, 1978.—*
*Decided October 3, 1978.*
(Also reported in 270 N.W.2d 194.)

For the plaintiff in error the cause was argued by *Melvin F. Greenberg,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Pamela Magee-Heilprin,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANSEN, J.   This review presents two issues: (1) whether the evidence was sufficient to support a finding that the victim's injury constituted "great bodily harm" as defined by sec. 939.22(14), Stats.; (2) whether the definition of "great bodily harm" set forth in sec. 939.22 (14) is unconstitutionally vague either on its face or as interpreted by this court in *La Barge v. State,* 74 Wis.2d 327, 246 N.W.2d 794 (1976).

Roberta Lynn Rowe, the victim, was walking in the vicinity of Wisconsin and Johnson streets in the city of Madison between 10:30 and 11 p.m. on the night of August 23, 1975. Shortly after becoming aware that a man was walking behind her, she was struck on the head from behind. She fell and her assailant grabbed her by the wrists and dragged her from the sidewalk onto the adjacent empty lot. He then dropped her wrists, picked up her legs and turned her around. At this point several people came to her aid and the assailant left the scene.

Although none of the witnesses saw the assailant strike the victim, several had seen him drag her and he spoke to the first two of the witnesses to arrive before he left the scene. One of the witnesses followed the assailant for several blocks. The witnesses were able to give police a description of the assailant, and three of the witnesses subsequently identified the defendant as the assailant while the defendant was being held by police as a suspect several blocks from the scene of the attack. The victim identified the defendant as the assailant from a photo array two days after the attack while she was still hospitalized.

At trial, the attending physician testified that the victim sustained a depressed skull fracture which cut into a blood vessel in the brain and caused a neurological impairment. The fracture required surgery in which the fractured portion of the skull was removed, leaving a hole in the skull approximately between the size of a quarter and a half-dollar. The doctor testified that the victim had completely recovered and that no permanent effects, other than the hole which would not need repair, were likely. The doctor testified that the injury could have caused death, was a severe and serious bodily injury, and that the neurological deficit would have been permanent without the surgery.

The victim testified that she was taken by ambulance to the hospital emergency room, x-rays were taken and she went into surgery. She awoke following surgery at 6 a.m. At that time she experienced a loss in feeling on her right side which lasted for the next six days. She testified that at the time of trial she suffered no effects from the injury other than the fact that she had a hole in her skull.

The defendant relied upon an alibi as a defense. Sec. 971.23(8), Stats. He testified he had spent the evening playing basketball with a friend and had passed the

Capitol Square, where he was stopped by the police, on the way home. His testimony was supported by the testimony of two witnesses.

## SUFFICIENCY OF EVIDENCE.

The defendant was convicted of a violation of sec. 940.23, Stats., which reads:

". . . Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not more than 10 years."

The element of "great bodily harm" required for a violation of this section is defined as follows in sec. 939.22(14), Stats.:

". . . bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury."

In *State v. Bronston,* 7 Wis.2d 627, 97 N.W.2d 504, 98 N.W.2d 468 (1959), an aggravated battery case, this court held that *ejusdem generis,* a rule of statutory construction, was applicable to the statutory definition. Under that rule the injury would have to be in the same category as one of the types of injury specifically enumerated in the statute. The defendant argues that since the testimony here did not show that there was a high probability of death, or a serious permanent disfigurement, or a permanent or protracted loss or impairment of the function of a bodily member or organ, the injury here did not, as a matter of law, constitute "great bodily harm."

*Bronston* also held that where the facts of the nature of the injury are undisputed it is a question of law whether the injury is "great bodily harm." In *Bronston*

this court found, as a matter of law, that a two-inch scalp laceration which required four sutures and a few hours hospitalization and which resulted in some headaches and traumatic arthritic pain for a time afterwards did not constitute "great bodily harm." However, in dictum, the court said, discussing potential injuries, that it was immaterial that the blow might have caused a fractured skull, suggesting that a fractured skull would be viewed differently.

This court next considered the "great bodily harm" clause in *Irby v. State,* 49 Wis.2d 612, 182 N.W.2d 251 (1971), also an aggravated battery case. *Irby* held that where there was a factual dispute regarding the seriousness of the injury which required expert medical testimony to resolve, the issue of "great bodily harm" was one of fact for the jury. *Irby* held that evidence that the victim suffered a chest wound which caused great loss of blood and was hospitalized for six days, 2½ in intensive care, was sufficient for the jury to find that the injury constituted "great bodily harm."

*Bronston* and *Irby* were the controlling cases on this issue at the time of defendant's trial. The trial judge instructed the jury on the elements of the crime and gave the statutory definition of "great bodily harm" without further comment on the meaning of that definition or the application of the rule of *ejusdem generis.*

The defendant contends that there was no factual dispute regarding the nature and extent of the injury which would justify submission to the jury under *Irby.* Since the injury, the defendant argues, was not *ejusdem generis* with the enumerated injuries the trial court should have followed *Bronston* and decided, as a matter of law, that the injury was not "great bodily harm."

In *Irby, supra,* this court stated at page 618:

". . . Under the facts of this case the doctor's testimony was necessary to determine the seriousness of the wounds, and it was within the province of the jury to

determine whether, as a matter of fact, these wounds caused great bodily harm. . . ."

This statement indicates that a jury question exists whenever expert medical testimony is necessary to determine the seriousness of the injury.

Expert medical testimony was given in this case to explain the nature and extent of the victim's injuries. The victim was permitted to testify only generally as to the injury she suffered and the procedures at the hospital. Although the defendant's attorney did not ask any questions concerning the injury itself when cross-examining the doctor, he did ask several questions directed to determining how much bleeding there would be with such an injury. The testimony of the lay witnesses indicated that the bleeding was either minimal or unnoticed; however, the defendant's lawyer introduced expert medical testimony from the preliminary hearing to the effect that initially there would be "a fair amount of blood." To the extent that the amount of bleeding was in dispute, a question of fact existed regarding the severity of the injury which required submission of the cause to the jury under *Bronston* and *Irby*. Likewise, as in *Irby*, expert medical testimony was given to aid in determining the severity of the injury, again requiring submission to the jury.

Since the issue was properly presented to the jury, the question that remains is whether, under the evidence presented, the jury could find that the injury constituted "great bodily harm."

*Ejusdem generis* means "[o]f the same kind," Ballentine, Law Dictionary (2d ed. 1948), p 424, and this rule of construction requires that the meaning of a general phrase following the enumeration of specific classes is limited to "things . . . of the same kind, class, character, or nature" as those enumerated. 73 Am. Jur.2d, *Statutes,*

p. 408, sec. 214. Applying this rule, the evidence must have been sufficient for the jury to find that the victim's injury here was of the same kind, class, character or nature as an injury which creates a high probability of death, causes serious permanent disfigurement or causes permanent or protracted loss or impairment of the function of any bodily member or organ. The jury would not have to find that the injury was in fact one of the enumerated injuries, only that it was of the same kind, class, character or nature.

Based on the evidence given at trial the jury could have reasonably found that a skull fracture which the doctor said could have caused death was of the same nature as an injury that creates a high probability of death. The jury could have found that a skull fracture which requires surgery that leaves a hole in the victim's skull was of the same nature as an injury that causes permanent serious disfigurement. The jury could have found that a skull fracture which causes a loss of feeling on the right side that would be permanent without surgery but which lasts only six days following surgery is of the same nature as an injury which causes permanent or protracted loss or impairment of a bodily function.

Thus, under the judicial interpretation of the statutory definition of "great bodily harm," which existed at the time of defendant's trial, the evidence supports the verdict of the jury.

## EFFECT OF LA BARGE V. STATE.

In *La Barge v. State, supra,* the legislative history of sec. 939.22(14), Stats., was reviewed. As a result *La Barge* overruled the *ejusdem generis* rationale of *Bronston* and held that the phrase "or other serious bodily injury" was intentionally added to the statute to broaden

its scope to include injuries which did not fall within the enumerated types.

Under the facts of *La Barge* it was also held that the issue of "great bodily harm" was one of fact for the jury and found that the jury there could reasonably have concluded that multiple cuts and stab wounds which required 100 inches of suture material and six days' hospitalization constituted "serious bodily injury" even though there was no probability of death.

Clearly, if the jury here had viewed the evidence in light of this broader interpretation of the definition it could reasonably have concluded that the victim's injury constituted "great bodily harm."

On this review the defendant, for the first time, urges the court to find that the *La Barge* interpretation of sec. 939.22(14), Stats., has rendered the statute unconstitutionally vague. It is contended that the phrase "or other serious bodily injury," as interpreted by *La Barge,* lacks ascertainable standards for determining guilt. No argument is advanced asserting the proposition that the statute is unconstitutionally vague for failure to give fair notice of the prohibited conduct. Any attempt to advance such an argument would be without merit.

It would appear that the defendant cannot be faulted for failing to raise the issue in the trial court since the issue as the defendant states it did not arise until the *La Barge* decision was rendered subsequent to the defendant's trial. However, if the statute is vague as interpreted by *La Barge* without the *ejusdem generis rule,* it would also be vague, on its face, as it was submitted to the jury. The jury instruction given by the trial judge did not explain the rule of *ejusdem generis* or suggest any meaning for the phrase "or other serious injury." The jury was free to, and may have, interpreted the statute in the same manner as the *La Barge* court.

We have repeatedly held that the constitutionality of a statute cannot be raised, as a matter of right, for the

first time on appeal or review. *See, e.g., Binder v. Madison*, 72 Wis.2d 613, 620, 241 N.W.2d 613 (1976) ; *State v. Weso*, 60 Wis.2d 404, 413, 210 N.W.2d 442 (1973) ; *State v. Weidner*, 47 Wis.2d 321, 323, 177 N.W.2d 69 (1970).

There have been occasions when, in the exercise of our discretion, we have considered constitutional issues when raised for the first time on appeal. In those cases there were no unresolved issues of fact and we concluded it was in the interest of justice to reach the issue. *See, e.g.: Binder, supra*, at 621; *Hortonville Educational Asso. v. Joint Sch. Dist. No. 1*, 66 Wis.2d 469, 479, 225 N.W.2d 658 (1975).

■

In the case before us there are no undisputed facts, both parties have briefed and argued the issue and we believe the issue is one of fundamental importance and that it is in the interest of justice to consider the issue.

The defendant argues that the phrase "or other serious bodily injury" fails to give the judge and jury sufficient standards or guidelines with which to adjudicate guilt.

■

In *State v. Courtney*, 74 Wis.2d 705, 711, 247 N.W.2d 714 (1976), we said:

". . . Before a statute or rule may be invalidated for vagueness, there must appear some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared, or such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the statute or rule."

The defendant directs our attention to *State v. Givens*, 28 Wis.2d 109, 135 N.W.2d 780 (1965), for the proposition that a catchall phrase such as "other serious bodily injury" can only be saved from unconstitutionality by an

interpretation that rests on *ejusdem generis* to give meaning to the phrase. In *Givens* the defendant was involved in a sit-in demonstration on the floor of the waiting room and corridor leading to the office of the Milwaukee County Board of Supervisors located in the Milwaukee County court house. *Givens* and others were charged with disorderly conduct contrary to sec. 947.01, Stats. The court there held that if the phrase "or otherwise disorderly conduct" meant conduct similar to the conduct enumerated, the statute identified the prohibited conduct with sufficient specificity. It must be recognized that *Givens* required such an interpretation in order to identify the prohibited conduct precisely enough to avoid infringement on first amendment rights.[1] No such problem exists in the instant case.

The issue posed is whether the phrase "or other serious bodily injury," without being restricted by the rule of *ejusdem generis* to the enumerated types of injury, sufficiently identifies the degree of injury necessary for a jury to convict a defendant of a violation of sec. 940.23, Stats.

Both parties cite this frequently used test for vagueness:

". . . If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional . . ." *Jones v. State,* 55 Wis.2d 742, 746, 200 N.W.2d 587 (1972); *State v. Mahaney,* 55 Wis.2d 443, 447, 448, 198 N.W.2d 373 (1972).

The test has also been stated:

". . . A fair degree of definiteness is all that is required. It is sufficient if the standard of guilt is reasonably ascertainable by men of common intelligence without guessing at its meaning. . . ." *Ministers Life &*

---

[1] *State v. Courtney, supra,* p. 713.

*Casualty Union v. Haase,* 30 Wis.2d 339, 362, 141 N.W.2d 287 (1966).

In determining the meaning of a statute nontechnical words and phrases are to be defined in accord with common usage and understanding. This meaning can be established using the dictionary definition. *Milwaukee County v. DILHR,* 80 Wis.2d 445, 450, 259 N.W.2d 118 (1977) ; *State v. Killory,* 73 Wis.2d 400, 407, 243 N.W.2d 475 (1976).

The word "serious" is defined as "having important or dangerous possible consequences" such as in "a serious injury." Webster's New Collegiate Dictionary. Serious also means "[i]mportant; weighty; momentous; grave, great, as in the phrases 'serious bodily harm,' 'serious personal injury,' etc." Black's Law Dictionary (rev. 4th ed., 1968).

Courts have defined serious bodily harm to mean "high in degree as contradistinguished from trifling," *Lawlor v. People,* 74 Ill. 228, 231 (1874), and " 'serious bodily injury' " as one which ". . . gives rise to apprehension —an injury which is attended with danger. . . ." *George v. State,* 21 Tex. App. 315, 317, 17 S.W. 351 (1886). The Arkansas Supreme Court said that "The phrase [great bodily injury] is difficult to define, for the reason that it well defines itself. . . ." *Rogers v. State,* 60 Ark. 76, 82, 29 S.W. 894, 895 (1894).

In *La Barge* this court quoted an Arizona Court of Appeals statement that " '. . . "serious bodily injury" . . .' " is a phrase of " '. . . ordinary significance, . . ." which the trial court need not define in its instructions since the words" ' . . . are well understood by any jury of ordinary intelligence.' " *La Barge, supra,* at 335. This court has, therefore, recognized that a jury is capable of

ascribing a specific meaning to the phrase "serious bodily injury."[2]

Presented with an instruction containing the entire statutory definition of "great bodily harm" a jury could reasonably interpret the phrase "other serious bodily injury" in that context, particularly so because of the preceeding phrases which describe severe injuries. Even though the general phrase is not restricted to the meaning of the enumerated injuries, it acquires sufficient definition because of the nature of the injuries enumerated.

"General and specific words in a statute which are associated together and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense analagous to the less general. . . ." 73 Am. Jur.2d, *Statutes,* p. 407, sec. 214.

Defendant's contention that the *La Barge* interpretation eliminates the distinction between the great bodily harm required for a violation of sec. 940.23, Stats., and the bodily harm required for a violation of the battery statute, sec. 940.20, is without merit. "Great bodily harm" still requires "serious" injury, something greater than mere "bodily harm." Although the line between the two is not mathematically precise, it is one a jury is capable of drawing. In *Flores v. State,* 76 Wis.2d 50, 250 N.W.2d 720 (1977), although the court did not consider the constitutional issue, it said, at 58–59:

". . . We do note that where that is the issue raised it is not easy as a matter of law to draw the line of demarcation between 'great bodily harm,' meaning 'serious injury,' and 'bodily harm,' meaning 'physical injury' or 'impairment of physical condition.'

"In another situation, where there was no factual dispute as to the relatively minor injury inflicted upon a

[2] In view of our decision, we do not reach the issue of retroactivity. However, we do observe that *La Barge v. State, supra,* was a review of a conviction that occurred prior to the trial of the defendant herein.

victim, our court held as a matter of law that such minor injuries were not sufficient to constitute the crime of aggravated battery as then defined by statute. Conversely, there certainly are situations where under no reasonable view of the evidence could the undisputed injuries sustained by a victim fall below the level of 'great bodily harm' required for conviction of aggravated battery.

"However, in many cases the situation will fall into a twilight zone. That is, whether the resultant injury constituted 'bodily harm' or 'great bodily harm' becomes as it was in *La Barge* an issue of fact for the jury to resolve. . . ."

Although we do not believe this is such a case, this court has recognized that although the question might be a difficult one, it was nonetheless one within the abilities of a jury.

■

Sec. 939.22(14), Stats., either on its face or as construed by this court in *La Barge v. State* is not unconstitutionally vague because of failure to give fair notice of prohibited conduct or set forth adequate standards for adjudication.

The judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.