# IN THE COURT OF APPEALS OF IOWA

No. 3-1244 / 13-0166
Filed February 5, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM EARL ROBY,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Webster County, Kurt L. Wilke, Judge.


        A husband appeals the judgment following a jury verdict finding him guilty of committing an assault causing serious injury to his wife. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Ricki N. Osborn, County Attorney, and Jennifer Benson and Cori Kuhn Coleman, Assistant County Attorneys, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Through appellate counsel, William Roby claims he received substandard representation at trial because his attorney did not contest the State's proof his wife, Aleta Roby, suffered serious injury. Roby also filed a pro se brief that asserts the district court employed an incorrect standard in ruling on his motion for new trial.

Finding no reasonable probability the district court would have granted judgment of acquittal on the serious injury element of the assault offense given the strength of the State's evidence, we conclude counsel's performance did not prejudice Roby's defense. As for the pro se claim, the record does not show the district court failed to apply the weight-of-the-evidence standard. Accordingly, we affirm.

## I.      Background Facts and Proceedings

The jury was entitled to credit the following information offered through the testimony of Aleta Roby (Aleta) and other State's witnesses.

Around 11:30 p.m. on August 16, 2012, Aleta and William Roby (Roby) were drinking whiskey and using methamphetamine in the living room of their Fort Dodge home. Roby grew angry with his wife, questioning her, then pushing and slapping her. His violence escalated to punching her with his fist. He next dragged her by the hair into the bedroom and threw her on the bed. Once on the bed he straddled her, pinning her arms with his knees. He continued to punch her in the head and face while she begged him to stop. Aleta felt "terrified" and believed he was going to kill her. She did not know how long the attack lasted

because she lost consciousness. She did recall seeing Roby finally roll over and fall asleep at 6:30 the next morning.

Her eyes were so swollen from the blows that she could not see her own injuries in the mirror for more than a day. The pain in her face was "excruciating." When she was able to observe the damage, she noted "massive black eyes" and bruises and swelling all over her face. She bled from her left ear for two weeks. In the days following the assault, she stayed in the house—feeling "afraid, in shock, terrified." When she tried to leave the house, Roby would pull her back in. Roby refused to take her to the hospital, instead acting like he "wanted to be [her] nurse and just take care of her." He would apply ice packs and a heating pad to her injuries. Roby eventually ordered his wife to vacuum up all of the hair he had pulled from her head.

On August 27, eleven days after the attack, Aleta convinced her husband to drive her to the food stamp office to take care of some paperwork. When she was at the office, Aleta called an assistant county attorney for help. Authorities escorted Aleta to the police department, where a detective interviewed her and then took her to the emergency room (ER).

The ER nurse practitioner noted it was hard for Aleta to open her mouth fully, her upper lip was swollen, and she could not properly position her dentures. Aleta's ears were so swollen the nurse could not use the instrument to look inside the ear canal. Aleta eventually was diagnosed with a ruptured ear drum that required multiple visits to a specialist and treatment with prescription drops.

Aleta's physical injuries also caused her to vomit blood, which required her to see a general practice physician.

During Aleta's initial ER visit, medical personnel ordered a facial CT scan that revealed an orbital blowout fracture, a condition where the bone encasing her eye orbit was broken. The ER staff referred Aleta to an eye surgeon in Iowa City. The surgeon removed a fragment of bone beneath her eye and replaced it with a plastic piece held together by three screws; the surgery did not leave a scar because it was accomplished by going through her eye. Aleta suffered pain in her face for four to five weeks after the surgery and reported still feeling discomfort at the time of trial. Aleta described the continuing sensation: "It's like I constantly have something in my eye, that's scratching my eye."

Meanwhile, on August 27, 2012, after interviewing Aleta, police officers searched the Roby residence for evidence. In the bedroom they found blood-stained pillow cases and a clump of hair inside the vacuum cleaner. Later DNA testing at state crime lab showed the blood and hair matched Aleta's genetic profile.

The State filed its trial information on September 6, 2012, charging Roby with four counts: (I) stalking, in violation of Iowa Code section 708.11 for actions on July 23, 2012; (II) willful injury causing serious injury, in violation of sections 708.1 and 708.4(1) for conduct on August 16, 2012; (III) domestic abuse assault with intent to inflict serious injury, in violation of sections 708.2A(1) and 708.2A(2)(c), also for conduct on August 16, 2012; and (IV) domestic abuse

assault causing bodily injury, in violation of sections 708.2A(1) and 708.2A(2)(b) for conduct on July 4, 2012.

The State dismissed the stalking charge on December 4, 2012, and proceeded to trial on the other three charges on December 11, 2012. After two days of trial, the jury returned verdicts finding Roby guilty of (I) assault causing serious injury, a class "D" felony (a lesser-included offense of willful injury) and (II) simple misdemeanor domestic abuse assault (a lesser-included offense of domestic abuse assault with intent to inflict serious injury) for the incidents on August 16, 2012. The jury acquitted Roby of the assault alleged to have occurred on July 4, 2012.

Roby filed a motion for new trial, which the district court denied at the January 22, 2013 sentencing hearing. The court imposed concurrent sentences of an indeterminate five years for the class "D" felony assault and thirty days for the simple misdemeanor assault. Roby appeals from the felony conviction.

## II. Scope and Standards of Review

Because Roby's complaint about the competency of his trial counsel springs from the Sixth Amendment, we review it de novo. *See State v. Canal,* 773 N.W.2d 528, 530 (Iowa 2009). To the extent he calls into question the sufficiency of the State's proof of serious injury, we review that underlying claim for errors at law, viewing the totality of the evidence in the light most favorable to the verdict. *See State v. Button,* 622 N.W.2d 480, 484 (Iowa 2001).

Often we reserve ineffective-assistance claims for possible postconviction relief proceedings so the parties may fully develop the record. *State v. Brubaker,*

805 N.W.2d 164, 170 (Iowa 2011). But where enough facts appear in the trial transcript to settle the dispute on direct appeal, we will do so. *Id.* at 171. Here, we find the record complete enough to decide the ineffectiveness claim. Roby bears the burden to show his trial attorney failed to perform an essential duty and prejudice resulted. *See Button,* 622 N.W.2d at 483. If he cannot show both prongs by a preponderance of the evidence, we will affirm. *See id.*

We review Roby's claim the district court erred in denying a motion for new trial based on the weight-of-the-evidence standard for an abuse of discretion. *State v. Ellis,* 578 N.W.2d 655, 659 (Iowa 1998). An abuse of discretion occurs when a district court's exercise of its discretion in deciding a motion for new trial rests on plainly untenable grounds or the extent of its exercise of discretion is clearly unreasonable. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

### III. Analysis

#### A. Did counsel provide ineffective assistance by not challenging the serious injury element when seeking judgment of acquittal?

In his motion for judgment of acquittal, Roby's trial attorney argued: "The State failed to prove the essential elements of the offenses, specifically that there was any assault or offensive contact between the Defendant and the alleged victim, Aleta Roby." Defense counsel went on to critique Aleta's credibility, asserting her injuries were consistent with causes other than an assault by her husband. Counsel did not separately dispute the State's evidence supporting the serious injury element.

On appeal, Roby does not pursue the claim that he did not cause his wife's injuries. Instead he contends the State did not prove his wife suffered serious injury as that term is defined in Iowa's criminal code.

To preserve error on a claim of insufficient evidence, defense counsel must move for judgment of acquittal at trial by identifying the specific grounds raised on appeal. *State v. Truesdell,* 679 N.W .2d 611, 615 (Iowa 2004). Counsel's failure to preserve error at trial can support a claim of ineffective assistance of counsel. *Id.* Roby claims his attorney was ineffective in not asking the district court to enter judgment of acquittal on the assault offense requiring proof of serious injury.

The code defines "serious injury" as either a "disabling mental illness" or a "'bodily injury' which does any of the following: (1) creates a substantial risk of death, (2) causes serious permanent disfigurement, or (3) causes protracted loss or impairment of function of any bodily member or organ." Iowa Code § 702.18. The State argues Aleta's wounds fall under the third bodily injury alternative: the protracted loss or impairment of a bodily member, which the legislature borrowed from the common law crime of mayhem. *See State v. Welton*, 300 N.W.2d 157, 160–61 (Iowa 1981).

The *Welton* court defined "member" as a "bodily part or organ" and, in turn, defined "organ" as "various cells and tissues . . . adapted for performance of some specific function." *Id*. at 161. The court defined "protracted" as "to draw out or lengthen in time or space." *Id*. at 160 (finding jury question engendered by six-week loss of the ability to chew due to broken jaw bone and citing with

approval *Cheatham v. State,* 270 N.W.2d 194, 198 (Wis. 1978), where Wisconsin court found protracted impairment based on skull fracture that caused loss of feeling on right side for six days with no further effects). The *Welton* court recognized not every bone fracture constituted a protracted loss or impairment but found a fracture that "substantially impaired the victim's health" met the definition in section 702.18. *Id.* at 161.

In a subsequent case, the supreme court decided a harm that "substantially interferes with an organ's function meets the statutory test." *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981). The *McKee* court defined impairment by its "common usage" as "any deviation from normal health." *Id.* According to the court, the term "impair" meant "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in any injurious manner." *Id.* Under *McKee*, a harm which made the function of an organ intensely painful or irregular constituted impairment as the term is used in the statute. *Id.* (concluding chronic menstrual irregularity and severe cramping as a result of sexual abuse was substantial enough to be an impairment).

Roby argues the photographic evidence does not establish Aleta's injuries substantially interfered with the function of a bodily member or organ over a protracted time period. He also contends Aleta's testimony that she suffered pain for four to five weeks after her facial surgery and continued to have a scratching sensation in her eye did not establish serious injury. His argument suggests it is necessary to have a medical opinion to meet the statutory definition at section 702.18(1)(b)(3).

We find nothing in the statutory language or case law interpreting it that would preclude finding a protracted loss or impairment of function based on a lay person's testimony. *See McKee*, 312 N.W.2d at 912 (finding serious injury based on victim's own testimony she suffered cramps that cause her to "double over in pain" despite gynecologist's testimony that he found no evidence of physical damage to account for victim's symptoms); *see also In re Doe*, 107 P.3d 1203, 1210 (Haw. Ct. App. 2005) (finding substantial evidence supported serious bodily injury element of assault when victim suffered orbital fracture and describing "protracted" as commonly understood word that needed no medical opinion). Aleta testified she could not see through her swollen eyes for more than a day, that the orbital blowout fracture discovered in the CT scan required surgical repair, that she suffered pain for more than a month after that surgery, and continued to suffer a constant scratching sensation in her eye up to the date of the trial.

Aleta's testimony and the photographs documenting her injuries generated a jury question as to whether the bodily injuries caused by Roby's blows created a protracted loss or impairment to her eye. Undoubtedly, the eye is a "bodily member or organ" under section 702.18. We find the jury was entitled to decide if the following conditions—(1) an orbital fracture which required surgical repair, (2) pain lasting four to five weeks after the surgery, and (3) a continuing abnormal scratching sensation in her eye—added up to a substantial impairment, defined as an extended loss of use or weakened or reduced use. *See State v. Epps*, 313 N.W.2d 553, 557–58 (Iowa 1981) (upholding jury instruction based on

language in *Welton* and *McKee*). While not all fractures qualify as serious injuries, those that require surgery to correct the damage are more likely to meet the statutory definition. *See State v. Mott*, 635 N.W.2d 301, 302 (Iowa Ct. App. 2001) (finding broken jaw set with steel plates which "never fully returned to its pre-fracture state" constituted serious injury). Further, more than one month of pain following surgery to repair the orbital fracture could fit the definition of drawn out or lengthened impairment. *See State v. Hilpipre*, 395 N.W.2d 899, 903–04 (Iowa Ct. App. 1986) (finding pain in fractured ribs six weeks after assault qualified as protracted loss under standards in *Welton* and *Epps*). Finally, a reasonable fact finder could consider a persistent abnormal irritation in the eye to be an impairment of the organ. *See State v. Sells*, 964 A.2d 97, 102 (Conn. App. 2009) (finding overwhelming evidence victim suffered serious physical injury when she sustained an orbital fracture to her eye which caused continued numbness around her eye and cheekbone).

Because the State presented substantial evidence that Aleta's bodily injuries caused a protracted impairment of her eye, we find no reasonable probability that had trial counsel challenged the serious injury element, the outcome of the case would have been different. It would have been proper for the district court to deny a motion of judgment of acquittal challenging the proof of serious injury and to submit that factual question to the jury. Accordingly, Roby is unable to satisfy the prejudice element of his ineffective assistance of counsel claim. *See State v. Taylor*, 689 N.W.2d 116, 136 (Iowa 2004) (rejecting

ineffective assistance claim when challenge to proof of injury would not have been successful).

**B.    Did the district court apply the correct standard to Roby's motion for new trial?**

In a pro se brief, Roby argues the district court applied an incorrect standard in overruling his motion for new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(6).  Under that rule, the district court may grant a new trial when the verdict is contrary to the evidence.  Iowa R. Crim. P. 2.24(2)(b)(6).  Contrary to the evidence means contrary to the "weight of the evidence."  *State v. Ellis,* 578 N.W.2d 655, 659 (Iowa 1998).  In considering a motion for a new trial, the court must weigh the evidence and consider the credibility of the witnesses. *State v. Maxwell,* 743 N.W.2d 185, 192 (Iowa 2008).

Roby's trial counsel filed a motion for new trial that cited *Ellis* and correctly distinguished the weight-of-the-evidence standard from the more deferential standard applied to motions for judgment of acquittal.  At the hearing, the defense referred to the circumstances set forth in the motion.  The State argued the verdict was not contrary to the evidence presented.  The district court denied the new trial motion without analysis.  We presume the district court applied the standard urged by the parties.  *See State v. Harrington*, 264 N.W. 24, 26 (Iowa 1935) ("Manifestly, unless the record is set out, this court may not presume error, but on the contrary, the presumption would be in favor of the regularity of the procedure and rulings of the court.").

When ruling on a motion for new trial, the district court should state the reasons for its decision.  *State v. Maxwell,* 743 N.W.2d 185, 192 (Iowa 2008).

But a court's failure to do so will not result in automatic reversal. *Id.* at 193 (upholding district court's rejection of claim the verdict was against the weight of the evidence despite court's failure to state reasons). "We are obliged to affirm where a proper basis appears in the record for the district court's action." *Id.* at 192.

We find no abuse of discretion in the district court's conclusion that the greater weight of the evidence supports the jury's determination of guilt on the assault causing serious injury offense. Aleta's facial injuries, along with the physical evidence retrieved from the scene, corroborated her testimony regarding the August 16 assault. Accordingly, the credible evidence did not preponderate against the verdict, and a new trial was not warranted.

**AFFIRMED.**